# AMERICAN MUTUAL LIFE INSURANCE COMPANY
## *v.* BERTRAM.

[No. 20,238. Filed March 9, 1904. Rehearing denied May 31, 1904.]

INSURANCE.—*Beneficiary in Life Insurance Policy.*—*No Insurable Interest.*—A policy of life insurance issued to a named beneficiary who had no insurable interest, without the knowledge of the insured, was void as being against public policy and in contravention of the act of March 9, 1883, §6 (Acts 1883, p. 203), which provides that when payments of assessments are made by another than the insured and without consent of the insured in writing, the beneficiary must have an insurable interest in the life of the insured. *p. 56.*

SAME.—*Recovery of Assessments Paid on Void Policy.*—*In Pari Delicto.*—The defendant issued a policy to S, insuring the life of E, without the con-

sent or knowledge of E, which was void for want of an insurable inter-
est. Thereafter, S assigned the policy to plaintiff, who was induced to
accept such assignment by the false representations of defendant's agent
—who possessed knowledge of its invalidity—that such policy was
valid and a good investment, and that the plaintiff, who had no insur-
able interest in the life of the insured, was authorized, by law, to take
an assignment thereof. Afterward, defendant's vice-president and
treasurer was informed by plaintiff of the facts concerning such assign-
ment, ratified the same, and informed plaintiff that the statements
of the defendant's agent were true, and advised plaintiff to keep her
dues paid. Relying on these representations plaintiff continued to
pay her dues until further tenders were refused, after which she ascer-
tained that the policy was void, and sued to recover the premiums and
dues paid on such policy. Acts of 1883, §6, page 204, provide that when
payment of assessments on policies are made by any person other than
the insured, and without the written consent of the insured, to be valid
such insurance must be supported by an insurable interest in the life
of the insured; and §9 of said act makes it a felony for any person
knowingly to secure a policy on the life of another without his knowl-
edge or consent. *Held*, that, in this case, the plaintiff was not *in pari
delicto* with defendant, and was entitled to recover the premiums and
assessments paid by her on such policy. *pp. 56–64.*

INSURANCE.—*Recovery of Interest.*—Interest upon premiums and assessments
paid on a void policy, is recoverable only from time of demand for re-
payment of the same. *p. 66.*

From Elkhart Circuit Court; *J. D. Ferrall*, Judge.

Action by Mary Bertram against the American Mutual
Life Insurance Company of Elkhart, Indiana. From a
judgment in favor of the plaintiff, the defendant appealed,
and the plaintiff assigned cross-errors. Judgment was
reversed on cross-error as to amount of recovery, and the
court was directed to restate its second conclusion of law
and render judgment for appellee. Transferred from
Appellate Court under §1337u Burns 1901. *Reversed.*

*J. M. Van Fleet* and *V. W. Van Fleet*, for appellant.

*C. W. Miller, J. S. Drake, S. C. Hubbell, Peter Crum-
packer* and *J. D. Moran*, for appellee.

DOWLING, J.—This action was brought by the appellee
to recover from the appellant premiums paid for insurance
upon a policy alleged to have been void from the time of its
execution. At the request of the parties, the court made a

special finding of facts, and stated its conclusions of law thereon. Exceptions were saved by both parties, and judgment was rendered for the appellee for so much of the premiums as was paid by her within six years before the commencement of the action.

Errors are assigned by the appellant upon each conclusion of law. The appellee assigns a cross-error upon the second conclusion.

Briefly stated, the facts were as follows: The appellant was a mutual life insurance company organized under the laws of this State, doing business on the assessment plan. On February 24, 1887, at the city of Elkhart, with full knowledge of the facts, it issued its policy of insurance to one Leander Stiles upon the life of one Mary Ellsworth, a resident of New York, without her knowledge. Stiles was not a creditor of Mrs. Ellsworth, nor was she under any kind of obligation, legal or moral, to him. She was related to him only as an aunt by marriage, and he was in no way dependent upon her. The consideration of the policy was the payment by Stiles of a membership fee of $25, and his agreement to make monthly payments of $6.80. The sum to be paid to Stiles, his heirs, administrators, or assigns, within thirty days after the death of Mrs. Ellsworth, and proof thereof, was his pro rata share of eighty per cent. of an assessment on all members of the insurance company—not exceeding, however, $4,000. Stiles paid the membership fee and the assessments for February and March, 1887. On March 2, 1887, in consideration of the agreement of the appellee to pay all subsequent premiums and assessments on the policy, he assigned to her a two-thirds interest in it. After such assignment the assessments were increased by appellant to $12 per month. The appellee paid all such premiums and assessments until October, 1897, when the appellant refused to receive any further payments, for the reason, as it is alleged, that the policy had lapsed in consequence of the failure of the appellee to pay

the October, 1897, assessment on the day it became due. Mrs. Ellsworth died in May, 1900, and when payment of the amount named in the policy was demanded by the appellee the appellant at first refused to pay it because the policy had lapsed on the non-payment of the October, 1897, assessment; but afterwards, on June 13, 1900, it denied its liability on the ground that neither Stiles, who took out the policy, nor the appellee, to whom it was assigned, had an insurable interest in the life of Mrs. Ellsworth. The application for the policy was made by Stiles through one Gusten, an agent of the appellant. Gusten knew that the application was made without the knowledge or consent of Mrs. Ellsworth; that Stiles was not a creditor of Mrs. Ellsworth; that she was not obligated to him in any manner; that Stiles was not dependent upon her in any way; that she was an aunt of the said Styles by marriage, but not otherwise related to him. The application was written by Gusten himself, and Stiles signed Mrs. Ellsworth's name to it in the presence of Gusten. The latter forwarded the application to the appellant, at Elkhart, Indiana, and on February 24, 1887, the appellant, on this application, issued to Stiles the policy on the life of Mrs. Ellsworth. At the time of the assignment of the policy to the appellee, and prior thereto, Gusten, who was acting as the agent for the appellant, and who knew all the facts before stated, for the purpose of inducing the appellee to take an assignment of the policy, falsely and fraudulently represented to her that the policy was valid and all right; that she had a right to take an assignment thereof; that she would be entitled to receive payment thereunder in case of loss; that it was a good investment for her, and one by which she might save her money. The appellee was ignorant of all the facts of the case and of the law in respect to them. She believed and relied on the representations of Gusten, the agent of the company, and was induced by them to take an assignment of the policy, and to pay to

Stiles therefor all he had paid out thereon, including the membership fee and the said monthly assessments. She continued to pay the assessments thereafter, under the belief that the policy was valid. Some two months after the policy was assigned to her, Barney, the vice-president and treasurer of the appellant, visited the appellee at her home, in Valparaiso, and she repeated to him all that Gusten had said to her in regard to the assignment of the policy. Barney, thereupon, with full knowledge of all that had taken place, represented to her that everything was perfectly right, and advised her to keep her dues paid. The appellee, thereafter, relying on these false representations and statements of Barney and Gusten, as agents of the appellant, continued to pay the monthly assessments on the policy until October, 1897. A few days after it became due she tendered the October assessment, and from month to month thereafter she offered to pay each subsequent assessment, but her tender and offer were refused. The total amount paid by the appellee on account of premiums and assessments was $1,574, which, with the interest thereon, amounted to $2,586.35. Before the commencement of the suit, the appellee demanded repayment to her of the amount so paid on account of the policy, but the appellant refused to repay the same, or any part of it. The action was commenced November 10, 1900.

The court's conclusions of law were: "First. That the said policy was void from the beginning. Second. That plaintiff is entitled to recover all moneys paid by her, with interest, within six years before the commencement of this action, being the sum of $1,007.35."

A reversal of the judgment is insisted upon by the appellant on the grounds (1) that the finding fails to show that the policy was issued without the knowledge or consent of Mary Ellsworth; (2) that it does not appear that the policy was invalid under section six of the act of March 9, 1883, either in the hands of Stiles or the appellee; (3) that

public policy forbids a recovery by the appellee; (4) that the appellee can found no right upon a misrepresentation of the law; and (5) that the appellee has no superior equity against the other members of the appellant as a mutual life insurance company.

Section six of the act of March 9, 1883 (Acts 1883, p. 203), under which the appellant company was organized, declares that when payments of assessments on a policy are made by any person other than the insured, and without his written consent, the beneficiary must have an insurable interest in the life assured. Section nine of the act makes it a felony for any person knowingly to secure a policy on the life of another without his knowledge or consent. Stiles had no insurable interest in the life of Mrs. Ellsworth. All assessments were to be paid by him, and the policy was issued to him without her knowledge or consent. The contract of insurance, therefore, was void, both as against public policy, and by force of the statute. *Continental Life Ins. Co.* v. *Volger* (1883), 89 Ind. 572, 575, 46 Am. Rep. 185; *Prudential Ins. Co.* v. *Hunn* (1899), 21 Ind. App. 525, 69 Am. St. 380; *Ruse* v. *Mutual, etc., Ins. Co.* (1861), 23 N. Y. 516; May, Insurance (4th ed.), §74; Beach, Insurance, §850.

The question, then, is, had the appellee, as the assignee of the policy, under the circumstances hereinbefore stated, the right to recover the premiums and assessments paid by her on account of the supposed insurance? The general rule is that an action will not lie to recover premiums paid upon an insurance which is illegal by reason of the policy being illegal by statute, or because of the illegality of the adventure insured. *Lowry* v. *Bourdieu* (1870), 2 Doug. 468, 14 Eng. Ruling Cas., 533; *Vandyck* v. *Hewitt* (1800), 1 East 96; *Russell* v. *De Grand* (1818), 15 Mass. 35; *Welsh* v. *Cutler* (1863), 44 N. H. 561; *Feise* v. *Parkingson* (1812), 4 Taunt. 640; *Anderson* v. *Thornton* (1853), 8 Ex. 425; *Waller* v. *Northern Assur. Co.* (1884),

64 Iowa 101, 19 N. W. 865; *Richards* v. *Marine Ins. Co.* (1808), 3 Johns. 307; *New York Life Ins. Co.* v. *Fletcher* (1886), 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934. But it is held that this rule does not apply where there has been no fraud on the part of the plaintiff; where the policy is void because of innocent misrepresentations; where the plaintiff has been induced to take out the policy by the fraud of the insurer and is himself innocent, or where it is clear that the policy was not a wagering contract, but was taken out under a mistake in regard to the rights of the party insured.

In this case it is to be borne in mind that the appellee herself did not take out the policy, but that, with the knowledge and consent of the appellant, and at its solicitation, she took an assignment of it. Upon the authority of *Continental Ins. Co.* v. *Munns* (1889), 120 Ind. 30, 5 L. R. A. 430, the assignment is to be treated as a new contract, to which the assignee and the insurer are the parties.

In *Lowry* v. *Bourdieu, supra,* the right to recover the premium paid upon a gaming policy issued in violation of an act of parliament was denied; but Lord Mansfield said "he desired it might not be understood, that the court held, that, in all cases where money has been paid on an illegal consideration, it can not be recovered back. That in cases of oppression, when paid, for instance, to a creditor to induce him to sign a bankrupt's certificate, or upon an usurious contract, it may be recovered, for, in such cases, the parties are not *in pari delicto.*"

In *Fulton* v. *Metropolitan Life Ins. Co.* (1892), 19 N. Y. Supp. 660, the plaintiff, being solicited for life insurance by defendant's agent, took out policies on the lives of her sister and brother, payable to herself, having signed their names to the application with the knowledge of the agent. After several years, she ascertained that the policies were void on that account, and brought an action to recover the premiums paid. It was held that the company was

chargeable with the agent's knowledge of the invalidity of the policies, and that the plaintiff was entitled to recover, though the facts were never communicated to the company.

In *Waller* v. *Northern Assur. Co., supra,* two policies of fire insurance were issued to the plaintiff as the absolute owner of the property insured, when he really held but a mortgage interest in it. No actual fraud was found in the representations concerning the title. The policies contained the condition that "if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, * * * it must be so represented to these companies, and so expressed in the written part of this policy, otherwise, the policy shall be void." The court said: "Under this condition, each of the policies was absolutely void, and incapable of binding or being enforced against defendants. * * * Each presents the case of a payment of money by plaintiff, and a failure to receive any consideration therefor, without any fraud or deception practiced by him. It is the simple case of money paid in good faith and nothing in return received. No element of fraud exists which defeats plaintiff's rights. Nor is it a case of voluntary payment, for it was made with the expectation of receiving a consideration in return, which has wholly failed, for the reason that the policy did not bind the defendants. Under familiar rules of the law, plaintiff is entitled to recover the amount of the premiums paid as money had and received to his use. This doctrine has been often recognized by the authorities as applicable in actions for the recovery of money paid as premiums upon policies when the risk did not attach, or the contract was void *ab initio.*"

The facts in *Fisher* v. *Metropolitan Life Ins. Co.* (1894), 160 Mass. 386, 35 N. E. 849, 39 Am. St. 495, were these: An agent of the defendant solicited the plaintiff's husband to effect an insurance on his life for the wife's

benefit, which the husband refused to do.   Afterward the agent, without the knowledge of the husband, urged the wife to effect such insurance, and procured a physician to visit and converse with the husband, and thereafter to sign the requisite examination.   The husband was not aware of the purpose of the physician in visiting him, nor did he know that any application had been made for insurance on his life.   The wife signed her name and that of her husband to the application for insurance, and also to the examination form on the back of the application.   The agent afterwards delivered to the wife a policy of insurance upon the life of her husband, payable to her in the event of his death, and the wife paid the premiums then and thereafter falling due for such insurance.   The agent also delivered to the wife a book upon which receipts of money paid by her were, from time to time, acknowledged, and the book contained extracts from the rules and regulations of the company to which the policy was subject.   Among others was a rule stating that under no circumstances could an application be written upon the life of a husband for the benefit of his wife without his consent, nor without an examination by the physician of the company, nor unless the applicant personally signed the examination form on the back of the application after the answers to the application had been made, and that any policy issued in violation of these rules should be void.   In July, 1892, the wife claimed that she was first advised of the invalidity of the policy for want of the consent of her husband.   She informed the president of the company by letter of that date that she had discovered that the policy had been issued against the rules of the company, and was not enforceable, and that the agent had told her at the time it was issued it was all right.   She therefore stated that she wished her money back.   The company did not make any direct reply to the letter, but afterward one of its agents urged the wife to continue her payments, which she refused to do, and again demanded repayment of

the money paid by her as premiums, which demand being refused she brought her action. In ruling upon an exception to an instruction given to the jury, the court said: "If the plaintiff, in collusion with Bannigan, the defendant's agent, intended to cheat the company, or practice a fraud upon it, then the money she has paid the company was paid in pursuance of this fraudulent intention, and she can not recover it back; but if she was innocent of any fraudulent intent, and was deceived by Bannigan, and induced by his fraudulent representations to make the application, then she could rescind the contract of insurance when she discovered the fraud, and recover back the amount of the premiums which she had paid. *Hedden* v. *Griffin* [1884], 136 Mass. 229."

In *Bales* v. *Hunt* (1881), 77 Ind. 355, this court held that while, ordinarily, relief against mistakes of law will not be afforded, yet where the mistake was induced or encouraged by the misrepresentations of the other party to the transaction, and the plaintiff, through misapprehension or mistake of the law, assumes obligations, or gives up a private right of property, upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief, if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake can not, in conscience, retain the benefit or advantage so acquired. See, also, Kerr, Fraud and Mistake (2d ed.), 398, 400; *Hollingsworth* v. *Stone* (1883), 90 Ind. 244; *Kinney* v. *Dodge* (1884), 101 Ind. 573; *Parish* v. *Camplin* (1894), 139 Ind. 1, 14; *Metropolitan Life Ins. Co.* v. *Bowser* (1898), 20 Ind. App. 557; *Supreme Lodge, etc.,* v. *Metcalf* (1895), 15 Ind. App. 135.

If the contract of insurance be illegal in its inception, the insured can not recover the premiums paid, if the parties are *in pari delicto*. The controlling inquiry, then, in the present case, is, were the parties to the transaction equally in

fault? It was said by Lord Mansfield, in *Browning* v. *Morris* (1878), Cowper 790, 793: "The rule is, *in pari delicto, potior est conditio defendentis.* And there are several other maxims of the same kind. Where the contract is executed, and the money paid *in pari delicto,* this rule, as Mr. Dunning contended, certainly holds; and the party who has paid it can not recover it back. For instance, in bribery, if a man pays a sum of money by way of a bribe, he can never recover it in an action; because both plaintiff and defendant are equally criminal. But, where contracts or transactions are prohibited by positive statute, for the sake of protecting one set of men from another set of men; the one, from their situation and condition, being liable to be oppressed or imposed upon by the other, there the parties are not *in pari delicto;* and in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract."

The rule is thus stated in 20 Am. and Eng. Ency. Law (2d ed.), 816: "It is one of the fundamental maxims of the common law that ignorance of law excuses no one. It is a maxim founded not only on expediency and policy but on necessity. * * * It is therefore applied most rigidly at law, and is only relaxed in equity where the mistake is mixed with misrepresentation or fraud, or where the ignorance of the complainant has conferred upon the defendant a benefit which he can not in good conscience retain."

The language used by the court in *Jestons* v. *Brooke* (1878), Cowper 793, 795, is directly applicable to the case under consideration: "This is an action for money had and received; and therefore it is analogous to a bill in equity. The ground of the action is, to recover half of the neat profits arising by the resale of certain goods purchased by the defendant as stated in the report. The general question is, 'whether the plaintiff ought to recover in an action for

money had and received?' That is, 'whether it is against conscience that the defendant should retain the whole profits of the goods in question to himself?'"

The present suit is not brought to enforce the illegal contract of insurance, or any right arising out of it. The appellee seeks only to recover from the appellant moneys paid by her to it without any consideration whatever. For, as the policy on the life of Mrs. Ellsworth was void from its inception, the appellant never incurred any risk, and the appellee never could have derived any benefit from it. At the time of the assignment of the policy, and immediately previous thereto, Gusten, acting as the agent of the appellant, and knowing all the facts which rendered the policy void, for the purpose of inducing the appellee to take an assignment of the policy, falsely and fraudulently represented to her that the policy was valid, that she would be entitled to recover payment thereunder in case of loss, and that the assignment would be a good investment for her. The appellee, who was a woman, believed these representations, and was induced by them to take an assignment of the policy from Stiles, and to reimburse him for his entire outlay up to that time. . She also agreed to pay all future premiums and assessments. Within two months after the assignment was made, and when she had paid a comparatively small amount on the policy, Barney, the vice-president and treasurer of the appellant, acting for it, visited the appellee at her home, and, when told by her what Gusten had said to her, with full knowledge of the facts, also falsely represented to the appellee that the policy was perfectly right, and advised her to go on and keep her dues paid up. Relying on these false statements, the appellee paid to the appellant premiums and assessments on the void policy to the amount of $1,574.

It can not be said that the parties to this transaction were *in pari delicto,* or that the appellant ought, in good conscience, to retain the moneys paid to it by the appellee.

The representations made to the appellee by the officers and agents of the company—one of them being its vice-president and treasurer—were calculated to impose upon and mislead anyone contemplating the purchase of a policy previously issued by the company. The parties did not stand upon an equal footing, and the officers and agents making the false representations to the appellee had every advantage over her which their special knowledge of the facts of the case, and of the law of insurance applicable to their company, could give. We think, too, that these representations that the policy was valid and would be paid were equivalent to a statement that it had been issued with the knowledge and consent of Mrs. Ellsworth, and that Stiles had such an interest in her life, as creditor or otherwise, as authorized him to take it out. So that the mistake of the appellee, occasioned by the fraudulent representations of the appellant's officers and agents, may be fairly regarded a mistake of fact as well as of law. The direct result of this mistake was that the appellee assumed obligations to pay the premiums and assessments on the policy, and that she parted with her money in discharging them.

In this connection, the fact is not to be overlooked that section nine of the act of 1883 (Acts 1883, p. 203) makes it a criminal offense for any person to secure a policy on the life of another without his knowledge or consent only when such act is done knowingly. The court expressly found that, in taking the assignment of the policy, the appellee was ignorant of the facts which rendered it void.

Our conclusion upon this branch of the case is that the appellant cannot in good conscience be permitted to retain the premiums and assessments paid to it by the appellee, and that she has the right to recover the same in this action.

A distinction between a mistake of law, affecting mere private rights, and such a mistake when the transaction is illegal by statute, or is against public policy, may exist, as contended for by counsel for appellant; but, giving to this

distinction its fullest effect, it could not, under the circumstances of this case, as shown by the special finding, defeat the appellee's right to recover the premiums and assessments paid by her. She did not take out the policy. She violated no statute. She knowingly did no act prohibited by law or by public policy. She has not attempted to enforce the illegal contract, or made any claim under it. She admits that she has no claim against the appellant upon the policy. While she must give up the insurance upon the life of Mrs. Ellsworth, because the contract was void, it is equally necessary that the appellant should surrender the money it has received from her without right, without consideration, and solely through the fraudulent misrepresentations of its officers.

The point that the appellee has no equity which is superior to that of the members of the appellant association is without merit, and requires no consideration. The corporation received the money and should repay it.

The trial court found that $1,574 had been paid by the appellee on account of premiums and assessments, and that the interest thereon amounted to $1,012.35, making a total of $2,586.35, but that the appellee was entitled to recover only the moneys paid by her within six years before the commencement of the action, with interest thereon.

The cross-error assigned by the appellee calls in question the correctness of the conclusion limiting the appellee's right of recovery to the sums paid by her within six years before the commencement of the action, and we are asked to grant her affirmative relief by requiring a restatement of this conclusion of law. It is well settled that this court has the right to grant such relief to the appellee even where the judgment is not reversed. In discussing the subject of the assignment of cross-errors by the appellee, this court said in *Feder* v. *Field* (1888), 117 Ind. 386, 388: "The rule (allowing the assignment of cross-errors) which has so long prevailed, and which we here sanction and carry to its

just and logical result, does no injustice to any party. It prevents a multiplicity of appeals, and yet presents for adjudication the rights of all the parties properly brought before the court. It enables the court to finally adjudicate upon the whole controversy. It prevents one party from taking an advantage of the other by appealing, and, after the assignment of cross-errors, dismissing the appeal and carrying the entire case out of court. It brings the practice on appeal into harmony with the practice in the trial courts, and gives uniformity and consistency to our system of procedure. It simplifies the practice, and yet preserves all rights. In deciding that cross-errors may be assigned, we do not, by any means, decide that it is necessary to consider them in every instance. Nor do we decide that they are always, or even generally, of controlling effect. If, for instance, all that the appellee asks is an affirmance of the judgment, then all that it is necessary to do, in case where an affirmance can be reached by disposing of the errors assigned by the appellant, is simply to consider and decide the questions presented by the appellant's assignment. It is not every case where cross-errors will entitle the appellee to affirmative relief, for in many cases they can do no more than prevent a reversal or settle a question of costs. Where, however, the entire record, and all the parties, are properly before the court on appeal, and it is manifest from the record before the court that the appellee has not received the relief to which he was entitled, this court may direct that it be awarded him. * * * With such a record before us, all questions should be decided, for, otherwise, the assignment of cross-errors would be an idle ceremony." *Patoka Tp.* v. *Hopkins* (1891), 131 Ind. 142, 31 Am. St. 417; *Johnson* v. *Culver* (1888), 116 Ind. 278; *Thomas* v. *Simmons* (1885), 103 Ind. 538, 547; 2 Ency. Pl. and Pr., 970.

The money received by the appellant from the appellee on account of premiums and assessments on the policy was

so received with the knowledge and consent of the appellee, to be applied in discharge of supposed obligations arising out of the transaction between the parties. Until the discovery by the appellee that the policy was void, and her rescission of it, the moneys so paid were held by the appellant with her apparent consent, as its own. Under the particular circumstances of this case, we think a demand was necessary before bringing the action. The statute of limitations did not begin to run until such demand was made, or until the disavowal of the contract by the appellant. Then, too, the contract on the part of the appellant was wholly executory, and on the part of the appellee it was a continuous one. *Taggart* v. *Tevanny* (1890), 1 Ind. App. 339, 357; *Littler* v. *Smiley* (1857), 9 Ind. 116; *Purviance* v. *Purviance* (1895), 14 Ind. App. 269, 272. Until June 13, 1900, both the appellant and the appellee treated the contract of insurance as a valid one, and acted under it. We think it clear that the statute did not begin to run against the claim of the appellee until June 13, 1900.

The trial court allowed interest upon the claim of the appellee from the date of the payment of the several premiums. We find no authority for this action of the court, and we have been referred to none. The provision of the statute on this subject is that interest shall be allowed on money had and received for the use of another, and retained without his consent. §7045 Burns 1901. According to our views of the case, interest should be calculated on the sum of the premiums and assessments paid by the appellee to the appellant only from the date of the demand made by her for their repayment. *Stanley's Estate* v. *Pence* (1902), 160 Ind. 636.

Judgment reversed on cross-error, and the Elkhart Circuit Court is directed to restate its second conclusion of law in conformity to this opinion, and to render judgment in favor of the appellee and against the appellant for the amount due.