PRUDENTIAL LIFE INS. CO. OF TEXAS v. PEARSON. (No. 1018.)*

(Court of Civil Appeals of Texas. Amarillo. June 28, 1916. Rehearing Denied Oct. 4, 1916.)

1. CORPORATIONS ⬉99(2)—CAPITAL STOCK— HOW PAID—"MONEY PAID"—"PROPERTY ACTUALLY RECEIVED."

A note, even if secured by trust deed, is neither money paid nor property actually received within Const. art. 12, § 6, providing that no corporation shall issue stock except for money paid, labor done, or property actually received, and a corporation cannot accept a naked note for stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 445; Dec. Dig. ⬉99(2).

For other definitions, see Words and Phrases, First and Second Series, Actually Receive; Second Series, Money Paid.]

2. CONTRACTS ⬉137(1)—CONSIDERATION— PARTIAL ILLEGALITY—EFFECT.

If any part of consideration in a contract is illegal and not severable, the whole consideration is void, whether the illegality arises from statute or common law.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 701, 706–712; Dec. Dig. ⬉137(1).]

3. INSURANCE ⬉33—STOCK—CONSIDERATION —PARTIAL ILLEGALITY.

Although Rev. St. art. 4711, provides that the capital stock of insurance companies may consist of valid first mortgages on realty, an insurance company cannot, in view of Const. art. 12, § 6, issue stock for note and trust deed, though it could invest in such security after the stock was paid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 38; Dec. Dig. ⬉33.]

4. CORPORATIONS ⬉106—CHARTER—FORFEITURE—WHO MAY SUE—PARTIES IN PARI DELICTO.

A corporation is particularly charged with knowledge of its powers, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1146, 1147, as to forfeiture of charter for illegal issuance of stock, and therefore cannot defeat a subscriber's action to cancel a note and trust deed given for stock, which it was illegal for the corporation to accept, on the ground that plaintiff was in pari delicto with it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 456–458; Dec. Dig. ⬉106.]

5. CORPORATIONS ⬉99(1)—CAPITAL STOCK— HOW PAID—"LOAN."

Corporation, empowered to issue stock only for money, labor, or property received, having illegally accepted note and trust deed for stock, cannot defeat the maker's suit for cancellation on the ground that the transaction was a loan.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec. Dig. ⬉99(1).

For other definitions, see Words and Phrases, First and Second Series, Loan.]

6. CORPORATIONS ⬉99(1)—CAPITAL STOCK— HOW PAID—"INNOCENT PURCHASER."

Neither is the company an innocent purchaser.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 444; Dec. Dig. ⬉99(1).

For other definitions, see Words and Phrases, First and Second Series, Innocent Purchaser.]

Error from District Court, Hale County; R. C. Joiner, Judge.

Suit by H. S. Pearson against the Prudential Life Insurance Company of Texas. Decree for plaintiff, and defendant brings error. Affirmed.

Jas. A. King, of Floresville, and Mathes & Williams, of Plainview, for plaintiff in error. Madden, Trulove, Ryburn & Pipkin, of Amarillo, and C. D. Russell and L. R. Pearson, both of Plainview, for defendant in error.

HENDRICKS, J. This suit was brought by H. S. Pearson, in the district court of Hale county, Tex., to rescind a subscription contract to 16 shares of stock of the Prudential Life Insurance Company of Texas, and to cancel a note for $3,200, representing the purchase price of said stock, and an accompanying deed in trust on 640 acres of land, executed to secure said note. The plaintiff, Pearson, alleged elements of fraud, consisting of certain representations relied upon by him in executing the subscription contract, note and mortgage. The court, on the theory, evidently, of the invalidity of the note and deed in trust as being in violation of the Constitution having been given in consideration for the issuance and delivery of the stock, peremptorily instructed a verdict in favor of the plaintiff for cancellation. In this cause the stock was actually issued and delivered, and the note and deed in trust were actually executed, one for the other.

[1] "No corporation shall issue stock or bonds, except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness, shall be void." Article 12, § 6, State Constitution.

It is argued that the note and deed in trust given for the stock constituted "property" within the meaning of the constitutional provision. On this question, that the note and deed in trust constituted property within the meaning of the constitutional provision, the following Texas authorities are cited for the purpose of enforcing the point: Cole v. Adams, 92 Tex. 171, 46 S. W. 790; O'Bear-Nester Glass Co. v. Antiexplo Co., 101 Tex. 432, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865; Aggs v. Shackelford Co., 85 Tex. 145, 19 S. W. 1085; Ft. Worth Imp. Dist. No. 1 v. City of Ft. Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994.

The Supreme Court, in the case of Cole v. Adams, 92 Tex. 171, 46 S. W. 790, supra, held that an option contract and a construction contract constituted such property when transferred to the corporation for stock as not to be inhibited by the provision of the Constitution and could be lawfully accepted by the corporation in exchange for its stock.

The case of Aggs v. Shackelford County, 85 Tex. 145, 19 S. W. 1085, supra, holds that a mortgage is property within the meaning of the article of the Constitution which provides that no person's property shall be taken, damaged, or destroyed, for, or applied to public use, without adequate compensation. The case of Ft. Worth Imp. Dist. No. 1 v. City of Ft. Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994, reiterates the doctrine. The case of O'Bear-Nester Glass Co. v. Antiexplo Co., 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865, though it held that an unpatentable secret formula was not the character of property which could be transferred for stock, is cited as disclosing the purpose of the convention in enacting the constitutional provision in question and that the particular note and mortgage constitutes such property, the transfer of which for stock is consistent with the spirit and purpose of the enactment.

No one can question the general principle that a note, and deed in trust, constitute property; however, as applied to this record, is it the species of property for which a corporation could issue its stock, and not excluded by the nomenclature of the Constitution? The issuance of the stock must be for "money paid," "labor done," or property "actually received." We are remitted to our own courts as to the solution of the question.

If you shear the mortgage from the transaction, the issuance of stock for the note is prohibited; the note is neither "money paid" nor property "actually received" within the constitutional provision. McCarthy v. Texas Loan & Guaranty Co., 142 S. W. 97; Mason v. First National Bank of Paint Rock, 156 S. W. 366; San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 105 S. W. 486, 114 S. W. 1174.

The case of McCarthy v. Texas Loan & Guaranty Co., supra, though comparatively recent, is so forcibly argued, and aptly presented, by Justice Higgins of the El Paso court on that side of the question as to become a leading case on the particular subject. Two questions were decided: i. e., whether a promissory note would be "money paid," or, if not, was it "property actually received," when contracted to be executed in consideration of the future issuance of stock? These were the sole questions involved, which, with the fiat of approval by the Supreme Court in denying the writ of error, forecloses further argument as to whether a note could be used for the purpose indicated. McCarthy agreed to take 25,000 shares of stock for $312,500, the greater part of which was to be paid by the execution of promissory notes, "to be indorsed by a solvent indorser," the balance cash. There was a $37,500 note, payable to the order of one Routt, an agent of the Guaranty Company, in selling the stock, and which represented the commission due Routt for making the sale. The action was one of specific performance to require the corporation to deliver the stock according to agreement, "and the notes and cash were tendered appellee and demand made that the stock be issued and attached to the note (as collateral security) in accordance with the contract." Justice Higgins said, in regard to the issuance of stock for money paid:

"The fact that the notes to be given by McCarthy were to be indorsed * * * and secured by a pledge of the stock, does not in any wise affect the question. If it is permissible to accept notes at all, unsecured, as well as secured, notes could be accepted."

With reference to the position that such notes would constitute "property actually received," it was said:

"It is true a promissory note is 'property' in one sense of the word, as, for instance, when it is in the hands of a third person. It has frequently been so held; but, as between the original parties to the same, it is but a mere evidence of indebtedness, and it would be a strained and unnatural interpretation of the Constitution to hold that it was there used in the sense contended for by appellants. To so hold would be to say that in one breath the organic law expressly refused to accept it as 'money paid,' and in the next breath permitted it under the guise of property, thus convicting the framers of the Constitution of a palpable inconsistency."

If the notes, in that case secured by a "solvent indorser," had been the character of property responsive to the constitutional provision, it is clear the court would have required the corporation to issue the stock, because the contract was not, nor probably could have been, questioned otherwise; which opinion, with the approval of the Supreme Court, as persuasive of this question, if it applies, requires us to follow it.

Plaintiff in error, however, argues that, because in this case a deed in trust on property double in value the amount of the debt, with a note, was also given for the stock, that fact adds strength to the contention that both note and mortgage constitute such property.

It is unnecessary to review the historical conception and development in equity which changed a mortgage as a conveyance and transfer of title to property to that of a mere security for the debt. A mortgage, apparently easy to define, is one of the most puzzling concepts in the law to express. Lord Denham said:

"It is very dangerous to attempt to define the precise relation in which mortgagor and mortgagee stand to each other in any terms than those very words"—i. e., mortgagor and mortgagee. Jones on Mortgages, vol. 1, § 16.

As an incident to the debt, following it as the shadow follows the substance, we at least know that no title passes to anything. Of course there is a right constituting an interest in land to the extent that it is subject to our registration statute. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54. But to say that the nature of the right or interest in the land disassociated from title constitute a transfer of anything, as that it could be characterized, when stock is given in exchange for the same, as "property actually received," would require more explanation and analysis than we are able to give. The land is the fund to be subjected to the debt and the right exists to impound it for that purpose, as an incident to the debt. If the note, as held in the McCarthy Case, supra, is neither "money paid" nor property "actually received," would a note with its incident, the mortgage, constitute "property actually received?" The term "property actually received," as a consideration for the issuance of stock, would suggest the idea of a passing of title to property, legal or equitable, and whether the property was real or personal, tangible or intangible, according to the reasoning of the particular opinion, though probably not necessary for us to decide. If a note, with a solvent indorser, which is a mere evidence of a right of indebtedness, would not constitute "property actually received," then a note, with a mortgage as security, would fall within the same category. The case of Cole v. Adams, 92 Tex. 171, 46 S. W. 790, holding that an option contract and a construction contract, and, by inference any other chose in action, when transferred and delivered in consideration of the issuance of stock, present a different question, upon analysis, than the one we have in this record. The title to the property, though a chose in action, passed. In this case a right passed, which may of course, be termed property, but not property "actually received," when you construe the Constitution as a whole. The note itself is prohibited as "money paid"; the mortgage follows the note. Justice Higgins remarked in the McCarthy Case, supra, that, to hold in one breath that the Constitution condemns the note as "money paid," and, in the next breath, is good as property "actually received," would convict the framers of the Constitution of an irreconcilable inconsistency. If the debt, necessary to exist in order to have a mortgage (regarding the latter as merely incident to the debt), is neither "money paid" nor property "actually received," it would seem to follow logically that the mortgage must fall with the note.

[2] Again, if any part of the consideration in a contract is illegal, if not severable, the whole consideration is void. It matters not whether it is illegal because it consists in some act prohibited by statute or condemned by the common law. Seeligson v. Lewis & Williams, 65 Tex. 217, 57 Am. Rep. 593; Wegner Bros. v. Biering & Co., 65 Tex. 507; Edwards County v. Jennings, 89 Tex. 618, 53 S. W. 1053.

[3] As to plaintiff in error's second proposition, on a different phase of the same question, it is argued that the constitutional provision will not be construed to forbid the acceptance of securities in which it must immediately reinvest its funds, and the following statute is quoted: Article 4711 of the Revised Statutes, applicable to insurance companies, provides:

"The capital stock of a company shall consist—first, in lawful money of the United States; or, second, in the bonds of this state or any county or incorporated town or city thereof, or the stock of any national bank; or, third, in first mortgages upon unincumbered real estate in this state, the title to which is valid, and the market value of which is double the amount loaned thereon, exclusive of buildings, unless such buildings are insured in some responsible company and the policy or policies transferred to the company taking such mortgage."

Evidently the third subdivision, with which we are only concerned, in regard to the

capital stock of insurance companies consisting of first mortgages upon unincumbered real estate, means mortgages where either the company has loaned a part of its capital stock, producing the mortgage, or invested a part of its capital stock in the purchase of such mortgages from others, where the market value of the land is double the amount "loaned thereon." We do not understand that, in reality, plaintiff in error contends that a proper construction of the statute would be that it in terms gives the right to receive mortgages executed by a subscriber in consideration for the stock; but that, the corporation having the right to loan its capital stock, evidenced by such mortgage, or invest it in purchasing mortgages from others, this right of transmutation of the capital stock, or acquisition of mortgages with such funds, inherently carries the right in the first instance to exchange the stock to the subscriber for his note and mortgage on his property; that equity looks to the substance and not to the form of the transaction.

The trouble with this argument is, if we start with the premise, if correct, that the execution and delivery of a note and mortgage is neither "money paid" nor "property actually received" by a corporation, in consideration for the issuance and delivery of its stock, the other conclusion derivable from the right of the transformation of property, would not follow. Suppose the Legislature had added another class of property, and had prescribed that the capital stock of an incorporation may also consist of promissory notes with "solvent indorsers": Could courts say that, having the right to buy notes, with solvent indorsers with its capital stock, that such a corporation would also have the convertible right, in the first instance, to take the notes in consideration for the issuance of the stock? Clearly not. Other insurance statutes cited by plaintiff in error are not necessary to discuss.

[4] It is assigned that the defendant in error could not maintain this action in a court of equity, for the purpose of canceling the instruments in question, for the reason that, if the contract is illegal, the parties thereto are in pari delicto.

We take it that, if the Constitution actually condemns the issuance of stock for the character of instruments in question, it is a benefit to the insurance company and the stockholders and policy holders in said corporation to have the law manifest its decree as expeditiously as possible. The Supreme Court of Massachusetts, in the case of American Tube Works v. Boston Machinery Co., 139 Mass. 11, 29 N. E. 65, said:

"* * * Where one has been held to be deemed a stockholder by estoppel, there has been a legal creation of the capital stock. * * * But where the issue of the shares is illegal, where no sufficient steps have been taken to authorize the creation of the capital stock, where

a person has acted and been treated as a stockholder in respect to shares which the company had no power to issue, and where the shares cannot legally exist, the person taking them cannot, by estoppel or otherwise, become a member in respect to them."

By virtue of article 1146, Vernon's Sayles' Revised Civil Statutes, vol. 1, any corporation which violates the provisions of that article in issuing stock, except for "money paid, labor done or property actually received," may be subject to a forfeiture of its charter by appropriate proceeding. Article 1147 makes it the duty of the Attorney General of the state, in certain proceedings, to also cancel any stock issued in violation of law. Pomeroy, Equity Jurisprudence, vol. 2, § 941, says:

"Even where the contracting parties are in pari delicto, the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this principle, and in compliance with the demands of a higher public policy, equity may aid a party equally guilty with his opponent, not only by canceling and ordering a surrender of an executory agreement, but even by setting aside an executed contract, conveyance, or transfer, and decreeing the recovery back of money paid or property delivered in performance of the agreement."

Marriage, brokerage contracts, and usurious agreements are examples. Of course usury contracts have a presumed element of duress which does not strictly enter into this contract; but the policy of permitting an action of this character, which in its result, carries with it an enforcement of the Constitution, and presumably a sound public policy, is to be approved rather than reprobated.

Policy holders, and stockholders of valid stock, are affected by the fact that there is void stock outstanding in a corporation, in which they are indirectly interested, and, viewing the securities in the hands of the insurance company as absolutely void, the quicker the void stock is off the books and other stock equivalent thereto is validly sold, the quicker the company would have an enhancement of its assets in compliance with law.

In this case we assume that neither party, as a question of scienter, really intended to violate the provision of the Constitution; it must be remembered that the Constitution prohibits the corporation from issuing the stock, in mandatory terms. It should know the law's commands. If by comparison of duty according to the law's mandates, between these litigants, you could raise an equity in favor of one against the other, and make one more culpable than the other, the company should know better than the subscriber.

The defendant in error has an outstanding five-year note and his land fastened with an apparent lien—a cloud upon his title— which, if the principle of abatement invoked by plaintiff in error was adopted, he would

have to await the belated maturity of the note and an action at law by the insurance company, upon the same, before he could obtain relief, by resistance, in that proceeding. Beer v. Landman, 88 Tex. 457, 31 S. W. 805, which, upon close reading, is not an authority for plaintiff in error, as applied to this record. See Pomeroy, vol. 2, § 939.

The action to cancel the note and deed of trust is not brought to enforce an illegal contract or any right arising out of it. The defendant in error seeks to annul instruments which plaintiff in error holds, clouding the title of land, for which there was no consideration and which the Constitution prohibits the company from receiving. Where the contracts or transactions are prohibited by statute for the sake of protecting one set of men from another set of men, the one from their situation and condition being liable to be oppressed or imposed upon by the other, there the parties are not in pari delicto. In furtherance of the policy of the statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract. American Ins. Co. v. Bertram, 163 Ind. 51, 70 N. E. 258, 64 L. R. A. 935. This is an interesting case, where a policy of insurance was written in violation of a statute prescribing a penalty for securing such a policy. In furtherance of the policy of the law, an innocent party induced to make such contract may bring his action to defeat the contract.

In this case the Constitution in terms is not against the making of the note, or the mortgage by Pearson, but it is against the insurance company issuing such stock. It is the stock which is void by virtue of the law, hence when it so issued there was no consideration for the notes and deed in trust. We think in furtherance of the policy of the law suits of this kind will be entertained.

The case of General Bonding & Casualty Company v. Mosely, 174 S. W. 1034, is, in some respects on the facts, similar to this case; and the enunciation of the principle as applied to the questions involved herein is the same. A writ of error was granted by the Supreme Court in that cause (183 S. W. xvi), however, upon an element that does not enter into this case. The Organization Company, in that case, according to the pleading, and some offered testimony which was rejected by the trial court, at the time of the incorporation of the Casualty Company, paid the amount of Mosely's subscription to the corporation at the time the charter was granted; the money so paid was with the understanding that in the event Mosely executed his note and deed in trust for the stock, it was to be returned, and this court treated it as a voluntary payment with which Mosely had no contractual connection, and, that as a last analysis the stock was issued for the note and deed in

trust. The Supreme Court, in granting the writ, used this language:

"We are of opinion that the Casualty Company was entitled to establish that the stock subscription was fully paid by others for Mosely before the stock was issued. If it was so paid it satisfied the subscription as between the company and Mosely, and the company was entitled to recover upon the note given, in our opinion, unless it is subject to cancellation for fraud."

We make this explanation in view of the similarity of the cases.

[5, 6] It is argued that the transaction in this record constituted a loan; and it is further contended that the insurance company is also an innocent purchaser. Without discussion, these contentions are overruled.

The judgment of the trial court is affirmed.