### J. N. COLE ET AL. V. J. J. ADAMS, RECEIVER.

No. 682. Decided June 23, 1898.

**1. Corporation—Paid Up Stock—For What Issued.**

A corporation may issue its authorized capital stock for either money, labor, or property. Promoters who transfer to the corporation property and contract rights obtained by them in contemplation of its organization can lawfully take, as paid-up stock, the fair value of the property and rights so transferred; and such value and the amount of stock to be issued therefor may be increased, where not issued till later, by net earnings of the corporation which, instead of distributing as dividends, it had invested in its plant prior to the issuance of the stock. (Pp. 175, 176.)

**2. Same—Liability of Stockholders.**

Stock was issued by a corporation in payment for land worth half the par value of the stock and for valuable contracts for the construction of water-works and light plants and net earnings invested in the plant prior to such issuance of stock, all of which were estimated by the corporation, in good faith, at the par value of the stock. Held, that the stockholders were not liable for payment of claims against the corporation, under Constitution, article 12, section 6. ( Pp. 173-176.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Brazos County.

*Watts, Aldredge & Eckford* and *S. R. Frost,* for appellants.—The corporators who were not subscribers for capital stock were entitled to shares of paid up capital stock to the full value of the property and effects owned and held by the corporation over and above its indebtedness at the time the stock was issued. The corporators and stockholders of a corporation are the real and beneficial owners of all the property and effects held by the corporation, and they are entitled to full paid up

shares of stock for the value of the property and effects of the corporation over and above the liabilities of the corporation. Const., art. 12, sec. 6; 1 Cook on Stockh., sec. 536; 2 Thomp. on Corp., sec. 2167; Williams v. Tel. Co., 93 N. Y., 189, 190.

A corporation may purchase any property, rights, and franchises which it may need in the prosecution of its lawful business, and may pay for the same in its capital stock, and if in said purchase said property, rights, and franchises are not purposely or fraudulently overvalued, then those so receiving said stock are not liable to the creditors of such corporation. Const., art. 12, sec. 6; Coit v. Gold, etc., Co., 119 U. S., 343; Bank v. Alden, 129 U. S., 372; Hollins v. Coal Co., 150 U. S., 383; 1 Cook on Stockh., secs. 35, 46; 2 Thomp. on Corp., secs. 1618, 1619, 1629, 1642; Phelan v. Hazard, 5 Dill., 45; Hospes v. Car Co., 50 N. W. Rep., 1117; Coffin v. Ransdell, 11 N. E. Rep., 23; Bickley v. Schlag, 20 Atl. Rep., 251; Woolfolk v. January, 33 S. W. Rep., 437; Walburn v. Chenault, 23 Pac. Rep., 660; Carr v. LeFevre, 27 Pa. St., 413.

*Baker, Botts, Baker & Lovett* and *J. E. Butler*, for appellee.—The profits or surplus earnings of a corporation belong to it, and the shareholders have no individual interest in or right to such profits until a dividend is formally and regularly declared by the board of directors. Thomp. on Corp., secs. 2126, 2127; Minot v. Paine, 99 Mass., 101; Hyatt v. Allen, 56 N. Y., 553; Hagar v. Bank, 63 Me., 509; Railway v. Nickals, 119 U. S., 306.

Under the pleadings of appellants and the uncontroverted testimony, it appears that at the time the issue of stock to the amount of $28,000 was made no stock had been subscribed, issued to, or accepted by anyone. It was therefore in the nature of things impossible to declare either a cash or a stock dividend on stock that had never been issued or subscribed for. As a matter of fact, the record discloses that no attempt was made to divide the profits by declaring a dividend of any character.

Appellants, having paid but 50 per cent of the par value of the stock issued to and accepted by them, became indebted for the balance unpaid thereon; and the fact that the stock was issued as paid up, when in fact it was not so paid, is not binding upon and can not affect the creditors of the corporation or the receiver, suing for their benefit. Mathis v. Pridham, 1 Texas Civ. App., 85; Sanger v. Upton, 91 U. S., 56; Sawyer v. Hoag, 17 Wall, 610; Nenney v. Waddill, 25 S. W. Rep., 308; Camden v. Stuart, 144 U. S., 114; Park Assn. v. Barnes, 58 N. W. Rep., 441; Coleman v. Howe, 154 Ill., 468; Scovill v. Thayer, 105 U. S., 143.

The appellants could not, as against the creditors, issue to themselves paid-up nonassessable stock without actually contributing to the corporate fund "money paid, labor done, or property actually received," in an amount equal to the par value of the stock so issued; and under the statutes and Constitution of Texas they could not appropriate to their own use the corporate property with which to pay for stock issued to

themselves. Const., art. 12, sec. 6; Street Railway v. Adams, 87 Texas, 130; Fitzpatrick v. Pub. Co., 2 So. Rep., 727.

Even had appellants been shareholders at the time stock was issued to them, and even if we assume that had the corporation, acting by formal resolution of the board of directors, authority to declare a stock dividend, and apportion to the several stockholders not only the profits earned, but also the enhanced value of the property, in order that such an issue of stock may be legal, it must clearly appear (the burden being upon the shareholders) that the company had at the time accumulated either a money surplus or visible, tangible, actual property in excess of its authorized stock. Fitzpatrick v. Pub. Co., 83 Ala., 606; Coleman v. Howe, 154 Ill., 469; Camden v. Stuart, 144 U. S., 115.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals have certified to this court the following explanatory statement and questions:

"The Bryan Water, Ice, and Electric Light Company was organized on the 27th day of September, 1889, and all of the appellants and J. J. Burrough, one of the seven defendants to this suit, were named in the charter as directors to serve for the first year. Prior to the 27th of September, 1889, the appellants and the said Burrough, as promoters of said corporation, had secured an option on the beer and ice business of the Anheuser-Busch Company, and after the creation of the corporation the Anheuser-Busch Company sold and conveyed its property and business to the Bryan Water, Ice, and Electric Light Company for the sum of seven thousand five hundred ($7500) dollars, and the appellants and the said Burrough, as promoters of the said corporation, prior to the beginning of its existence, made an arrangement with the city of Bryan for the construction of waterworks and light plants, and the contract for this purpose was consummated between the city and the corporation on the 19th of October, 1889; and said city issued its bonds in the sum of seventeen thousand ($17,000) dollars, and delivered them to the corporation, the Bryan Water, Ice, and Electric Company, and the bonds were negotiated, and the money from sale of said bonds was expended in the erection and improvement of its plant by the said corporation; and to secure the indebtedness thus incurred by the city and to secure the faithful performance of its contract with the city for furnishing it with water and lights, the company executed a mortgage upon the entire property; and subsequent to the incorporation of the said company, the appellants and the said Burrough had caused to be conveyed to it certain real estate situate in the said city of Bryan, and the price paid by them for said real estate was fourteen thousand ($14,000) dollars, and this was the entire amount contributed by the said appellants and said Burrough prior to the 22d of May, 1890, in either money or property, to the corporation, and on said day the said corporation, in good faith and with no intent to deceive or defraud anyone, acting through its board of directors, estimated its property, contracts, rights, and franchises, and the net earn-

ings of the company, which had been invested in said. plants, and the increased value of the plants, to be of the value of twenty-eight thousand ($28,000) dollars over and above its debts; and on said day (no certificates of shares of stock having been issued), said company issued paid-up capital stock of the par value of one hundred ($100) dollars per share, as follows: to each of the six appellants, forty shares; and to the said Burrough, forty shares. No dividends were ever declared upon the profits or surplus earnings of the corporation. Between the 22d of May, 1890, and the first day of September, 1890, the defendant, Burrough, and the appellants, with the exception of the appellant Fuller, each paid to the corporation five hundred dollars, and to each of them on said day the corporation issued ten shares of paid-up stock of the par value of one hundred dollars per share.

"While the corporation was solvent and a going concern appellants G. W. Norrell and A. D. McConnico each transferred and assigned all of the original shares of stock received by him; their transfers were made in accordance with the rules of the corporation, and without intent to avoid liability to creditors of the corporation. These transfers were made in accordance with the rules of the corporation, and without intent to to the court by the receiver then existed.

"This suit was brought by order of the court in which the receivership is pending to recover of the original seven incorporators and shareholders the balance alleged to be due by them upon their respective stock subscriptions. The appellants deny their liability and allege that the stock issued to them in May, 1890, was fully paid for by them in the property conveyed to the corporation under their direction, and the price of which was paid by them, and by the increase in the value thereof, and the increase in the value of the property purchased and paid for by the corporation between the dates of said purchases and the date of the issuance of said stock by the corporation, and by the profits of its business between the organization of the company and the issuance of the stock, the same having been expended in betterments to its plant, together with the value of franchise and the services rendered by appellants, as promoters of the corporation, in procuring an option on the property of the Anheuser-Busch Company situate in Bryan and in perfecting an agreement with the city of Bryan, by which said corporation secured a contract with said city for the erection within its limits works for supplying the city with water and lights, and that these several items were duly considered by the directors of the corporation when they issued forty shares of its stock to each of the appellants and to defendant Burrough, and that the same constituted the consideration for said shares of stock. The two appellants, who assigned and transferred their stock, alleged that their assignees had notice at the time of the transfer of the manner and the conditions upon which the stock was acquired by said appellants. The evidence as to notice is conflicting as to some of these assignees; but as to one, at least, the evidence shows notice conclusively; one of these

transferees became a director of the corporation after the transfer of the stock to him, and he is one of the largest of the creditors of the corporation for whose benefit this suit is brought.

"At the time of the issuance of stock, in May, 1890, the six appellants and the defendant Burrough were alone entitled to receive shares of stock, and prior to that time no stock had been issued to anyone. On behalf of the appellee, no witness testified that the valuation placed by the directors upon the property of the corporation in May, 1890, when certificates of shares of stock were issued, were erroneous; and the testimony of the appellants given in their own behalf was that the valuation was just and fair. The charter of the corporation provided for capital stock to the amount of fifty thousand dollars.

"Upon the foregoing statement this court respectfully propounds to the Supreme Court the following questions:

"First.—Are the stockholders of the Bryan Water, Ice, and Electric Light Company liable for the payment of the claims established against the corporation in the suit, of which this suit is an ancillary proceeding for 50 per cent of the par value of the stock issued to them on the 22d of May, 1890?

"Second.—If the stockholders are so liable, are the two appellants who transferred their stock liable, or are they released by virtue of the transfer of their stock when the corporation was solvent and prosperous, or is notice to their transferees that the stock was not fully paid for essential to effect the release of the appellants from liability to the creditors? In other words, when the law declares that shareholders of a corporation are liable to its creditors for such amounts as are unpaid upon their respective shares of stock, upon which stockholders is the liability imposed, upon those to whom the stock was originally issued, and who may have transferred their stock and ended their connection with the corporation, or upon those who own the stock when the demand is made by the creditors for the payment of such sums as may be due for the stock?"

We are of opinion that the first question must be answered in the negative. The company was authorized to issue capital stock to the amount of $50,000. Under article 12, section 6, of the Constitution, which provides that "no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void," such stock could be issued for money, labor, or property. Defendants, prior to the issuance to them on May 22, 1890, of stock aggregating $28,000, had caused to be conveyed to the company lands for which they paid $14,000, and we do not understand that any claim is made that it was not worth at least that amount. This would therefore clearly pay for at least 50 per cent of said $28,000 of stock issued. Then in order to hold defendants still liable for 50 per cent of the value of the stock, we must reach the conclusion that said constitutional provision does not permit the contracts obtained for the

company by the defendants with the Anheuser-Busch Company and with the city of Bryan, and the net earnings which had been invested in the plant prior to May 22, 1890, whatever may have been their value, to be considered as a basis for the issuance of such stock. As to said contracts we can not see that there can be a possible question but that they, to the extent of their value, were "property actually received" from the defendants, they having secured them before the company was organized and subsequently caused them to be transferred to it. As to the net earnings, if defendants had received stock, as we have seen they might have done, in payment for the fair value of the lands and contracts, it would seem beyond controversy that they could have properly declared a dividend upon such stock to the extent of the net earnings, and with such dividends could have purchased from the company some of the undisposed of capital stock, and the company could have invested such earnings in its plant. Now, we are of the opinion that exactly that result was reached by the company having under the management of defendants first invested such earnings in the plant and thereafter issued to defendants stock therefor. The thing done being lawful, we do not think the fact that the parties proceeded in an irregular way should destroy their rights when no one was prejudiced thereby. The evidence stated would not have authorized the finding that all these things were of no value, and therefore that 50 per cent of said $28,000 stock was still unpaid.

Having answered the question certified upon the grounds above, we do not feel called upon to determine whether the holder of a "fictitious increase of stock" which is by said constitutional provision declared "void," and which could not entitle him to any of the rights of a stockholder, could be held liable thereon, that question not having been argued.

Since we have so disposed of the first question, we do not understand that an answer to the second is desired.