## SHEPPARD et al. v. LONE STAR GAS CO.

### No. 9566.

Court of Civil Appeals of Texas. Austin.
July 10, 1946.

Rehearing Denied July 24, 1946.

**1014**

Grover Sellers, Atty. Gen., and W. V. Geppert and J. Arthur Sandlin, Asst. Attys. Gen., for appellants.

Marshall Newcomb and Warren J. Collins, both of Dallas, and Ben H. Powell, of Austin, for appellee.

BAUGH, Justice.

Suit was by the Lone Star Gas Company against the Comptroller, the Treasurer, and the Attorney General of Texas (for con-venience hereinafter referred to as the State) under the provisions of the protest statute (V.A.C.S., Art. 7057b) to recover $55,780.68 paid by said company under pro-test as gas utility taxes for the first quarter of 1943. Trial was to the court without a jury and judgment rendered for the Lone Star as prayed for; hence this appeal.

The sole question presented is whether appellee, under the facts proven and stip-ulated, owed a gross receipts tax for the three months in question, (January 1, 1943, to March 31, 1943), under the provisions of Art. 7060, R.C.S., as variously amended, Vernon's Ann.Civ.St. art. 7060; or owed only a beginner's tax of $50 for such period under the provisions of Art. 7073, R.C.S.

Art. 7073 provides: "If any individual, company, corporation firm, or association, in this chapter mentioned, shall begin and engage in any business for which there is an occupation tax herein imposed, on or after the beginning day of the quarter for which said tax is imposed, then, and in all such cases, the amount of such tax for said beginning quarter shall be and is hereby fixed at the sum of fifty dollars, payable to the State Treasurer in advance: but for the next succeeding quarter, and all other succeeding quarters, the tax shall be de-termined by reports to the Comptroller of the business for the preceding quarter, or part thereof, as herein otherwise in this chapter provided; and reports and pay-ments of such tax shall be made subject to all other provisions of this chapter."

Under Art 7060 a gas utility is required to make quarterly reports of its gross re-ceipts for the preceding quarter; and to pay, along with such report, the tax therein levied for the succeeding quarter (in the instant case January 1, 1943, to December 31, 1943) based upon such gross receipts from business done during such preceding quarter. If the reorganization of the busi-ness involved, and the formation of the new corporation, be ignored, and Art. 7060 be held here applicable, then the tax sued for herein would be due and owing.

The facts under which this suit arose were substantially as follows: Prior to De-cember 12, 1942, the Lone Star Gas Cor-poration, a Delaware corporation, having

a permit to do business in Texas, and being a holding corporation, owned and controlled as its subsidiaries, the following named enterprises: The Loan Star Gas Company, a Texas corporation; The Dallas Gas Company, a Texas corporation; Texas Cities Gas Company, a Texas corporation; Community Natural Gas Company, a Delaware corporation; and the Lone Star Gasoline Company, a Delaware corporation. Pursuant to the provisions of Federal Public Utility Holding Company Act, enacted in 1935, U.S.C.A. Title 15, §§ 79a to 79z—6 and of the demands made by the Federal Securities and Exchange Commission (alphabetically known and commonly designated as the SEC) created by, and its powers defined in, said Act, a plan of reorganization of said corporation's holding company system was submitted to and approved by the SEC. Under this plan, a new Texas corporation (appellee herein) was organized on December 11, 1942, with a capital stock of $54,990,000 divided into 5,499,000 shares of $10 each. All of this stock was subscribed by the Lone Star Gas Corporation, the Delaware parent company.

As payment for this capital stock, the Delaware parent corporation, joined by the five above named subsidiaries, conveyed by instrument dated December 31, 1942, effective January 1, 1943, to the newly formed Texas corporation, all of the properties and assets of every kind, of the former. All of the old subsidiary corporations were thereupon dissolved. Each of them had, however, prior to such assignments, discharged all of its liabilities up to January 1, 1943, including payment by each of the gross receipts tax due by it under Art. 7060 for the last quarter of 1942. That is, up to January 1, 1943. No surpluses, however, of the dissolved corporations were transferred to the newly formed Lone Star Gas Company. It began business as to January 1, 1943, as a newly created legal identity, under a new set of by-laws, with a new and different capital structure from that of its predecessors, and a new certificate of public convenience and necessity from the Federal Power Commission. However, the business of the predecessor corporations, that of serving the public of some 291 towns and cities in

Texas with gas, was continued by the new corporation at the same rates, with the same facilities, without interruption, and with the same personnel. So far as the consumer was concerned the business continued as theretofore.

The trial court found, and its findings are not attacked, as follows:

"5. That the reorganization of said Lone Star Gas Corporation's holding company system; the creation pursuant thereto of plaintiff as a new private Texas corporation on December 11, 1942, and the acquisition by plaintiff on January 1, 1943, of the properties, business and assets of the above predecessor corporations mentioned in paragraph 2 above, were accomplished and carried out in good faith and in accordance with law and were not for the purpose of avoiding or evading any taxes owing or which might be owing to the State of Texas, including the occupation tax levied by Article 7060, 1925 Revised Civil Statutes of Texas, as amended.

"6. That the reorganization of said Lone Star Gas Corporation's holding company system; the creation of plaintiff as a new private corporation on December 11, 1942, and the acquisition by plaintiff on January 1, 1943, of the properties, business and assets of said predecessor corporations was free and clear of any fraud or intent to defraud the State of Texas of any taxes due and owing by the said predecessor corporations or plaintiff or of any taxes which are or might be collectible by said State of Texas against the said predecessor corporations and the plaintiff. That in the said reorganization of the above named corporations and in the creation of plaintiff as a new corporation and by the acquisition by plaintiff of the aforementioned properties, business and assets there was no purpose or intent of defeating or attempting to defeat the rights of any creditor, including the State of Texas, or of avoiding any lawful obligation."

The court therefore concluded that appellee was a "beginner corporation" as of January 1, 1943, under Art. 7073, and not subject to taxation under Art. 7060.

It is the contention of the State that where a new corporation is organized,

takes over all of the assets of constituent or predecessor corporations, and continues the same business as the old corporations, it is liable for all the debts and liabilities of the old corporations; that such process amounts merely to continuing the same business under a new name; and that consequently the new corporate fiction should be disregarded and the tax computed as though no such change had occurred. It is unnecessary to cite or review the cases relied upon by the State. The general rule relied upon by the State relates to debts of the old corporations. But it is not applicable here. In the instant case, one of the conditions of the transfer of properties to the new corporation was, with one exception, not material here, that all such debts of the predecessor corporations be first paid. This was done, including taxes due by them up to January 1, 1943. The tax liability here involved was not a debt against the former corporations, but one incurred against the new corporation after it began to function as such. Appellee does not deny tax liability against it for the period in question; nor does the State urge that such tax was due by the old corporations. The question here presented is under which statute does the new corporation owe the tax.

The State further urges that the rule in equity should be applied under the facts of this suit, "that the legal fiction of corporate entity may be disregarded where the fiction is used as a means of perpetrating fraud or is relied upon to justify wrong." First National Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 103, 125 A.L.R. 265, and cases therein cited. Numerous cases are cited and reviewed in the State's brief in support of this contention. However that is a rule of equity grounded upon cases involving bona fide debts owed by the old corporation to its creditors and sought to be avoided by the new corporation. Clearly in such cases, to hold otherwise, would be to lend judicial sanction to a fraud or palpable wrong. But such rule has no application here. The trial court's findings, not here attacked, forecloses any issue of fraud. The reorganization while made voluntarily in a sense, was in reality compelled by the SEC to meet the requirements of the federal statute. No preexisting debts are involved, the proceeding here is purely statutory and involves only the proper construction of statutes.

Nor do the cases cited involving chain store taxes apply here. See H. E. Butt Grocery Co. v. Sheppard, Tex.Civ.App., 137 S.W.2d 823; Central Power & Light Co. v. State, Tex.Civ.App., 165 S.W.2d 920. In those cases it was not necessary to disregard corporate entities; but the tax was levied as provided in that statute on every corporation owned or controlled by majority stock ownership "or ultimately controlled or directed by one management or association of ultimate management." Those cases involved an entirely different statute, and different issues from those here presented.

We come now, though not in the order presented, to the construction of Art. 7073. Being a taxing statute it should be strictly construed against the State. Texas. Unemployment Compensation Com'n v. Bass, 137 Tex. 1, 151 S.W.2d 567; State v. Praetorians, 143 Tex. 565, 186 S.W.2d 973, 158 A.L.R. 596. If reasonably capable of two constructions, therefore, that which favors the taxpayer should be applied. If, however, the legislative intent is clear, that intent should be effectuated; and such intent is to be arrived at, if possible, from the language of the statute itself. These are uniform canons of statutory construction, relied upon by all parties to this suit, and require no citation of supporting authorities. See, however, 39 Tex.Jur., § 90, p. 166, § 93, p. 176; 31 Am.Jur., §§ 309, 310, p. 361.

Narrowing the issue to the language of the Act, "If any * * * corporation * * * shall begin and engage in any business for which there is an occupation tax herein imposed * * *," it is the contention of the State that the statute encompasses and applies only to a *business* which is begun, initiated, started for the first time, regardless of whether the corporation taxed is a new or old corporation, or has engaged in any kind of business theretofore or not. That if a newly organized corporation merely takes over and continues to operate an established business subject to such tax, it is not a beginner within the meaning and intent of said

statute. As indicative of such intent it is urged that the only reason for not applying Art. 7060 to a "beginner," as provided in Art. 7073, is that such "beginner" does not have gross receipts from such business for a preceding quarter on which to compute such tax. That consequently where such established business, regardless of its owner, does have such record of gross receipts for a preceding quarter on which a tax under Art. 7060 can be computed, then as to it the reasons for application of Art. 7073 fails, and its tax falls under Art. 7060. In brief, that the language of the statute should be construed objectively rather than subjectively.

Appellee, on the other hand, insists that the trial court properly construed the statute subjectively. That is, that the language used and fairly construed, refers to and applies to the taxpayer, the individual or corporation, which for the first time "begins and engages in" the business involved, whether that business be one already established, or one which is started anew.

▮▮▮ It is to be noted that the Article in question applies to *any* corporation which *begins* and engages in *any* business. The statute was obviously intended to be comprehensive. Its language so indicates in the use of the word "any" as applied both to the taxpayer and to the business conducted. It must be presumed that the legislature, absent any language or limitation to the contrary, intended the term "any" as used in Art. 7073 to be as inclusive as the terms used in the various statutes in said Chapter which impose occupation taxes. In naming and describing the parties on whom such taxes are levied, these statutes use the words "each," "every," "all," "whoever," etc. Thus the term "any" whether applied to the taxpayer, or the business conducted, should be given a like meaning, and when given a liberal interpretation in favor of the taxpayer, it includes every corporation, whether it be a new corporation taking over an established business; or an old corporation which, for the first time engages in the business which makes it liable for the tax. And the same would be true as to "any business" which such corporation begins

and engages in, whether it be a business started for the first time or one already established. If the legislature had intended that Art. 7073 not apply to a "beginner" corporation which, for the first time "engages in" a business already subject to such tax, and the owner of which had theretofore been paying such tax, it could very easily have so provided in express language. That it has not done. And not having done so, we conclude that it did not so intend. If the appellee be treated as a new corporation and a new and distinct entity, which we think it must be, then certainly, as such, whatever business it engaged in, it began it so far as that corporation was concerned. That it was to be a new corporation, with a new identity, new status, new and separate obligations and liabilities from its dissolved predecessors, was clearly the purpose and objective of the Federal Public Utility Holding Company Act, and the requirements of the SEC. That was what the reorganization was designed to accomplish.

But the State urges that to apply Art. 7073 instead of Art. 7060 would be unjust and inequitable and enable appellee to escape a tax burden while merely continuing in the same manner the same business theretofore conducted which, but for such paper reorganization would have been liable for the tax. However, the tax is not imposed upon the business conducted, but upon the corporation. It is true that the character of the business determines whether the corporation is liable; and the volume of such business determines the amount of the tax. But the tax is none the less against the corporation and the penalties imposed for non-payment are against it, not against the business it conducts.

Nor is the situation as inequitable as the State insists. The change effected by such reorganization was not merely a matter of form, or a paper transaction, but one forced upon the business under federal law, and, as the record discloses, largely dictated by the SEC. Appellee had little or no choice in the matter. The record also discloses that in addition to necessary expense of securing a new charter, with accompanying fees, and transfer of properties, the new corpo-

ration had to pay income taxes on a new basis; new books and accounts had to be set up; new by-laws were adopted and new officers and directors elected; consent of of some cities had to be obtained to transfer franchises from the old corporations to the new; new requirements of the Federal Power Commission had to be met; a new certificate of public convenience and necessity obtained; a new capital structure was set up, in that appellee's capital stock was all par value stock, whereas, that of the predecessor corporations consisted of both par value stock and no-par value stock; appellee started business on January 1, 1943, without any earned surplus, the surpluses of its predecessors having been distributed and not assigned along with other assets to the new corporation. While the record does not disclose what the costs to the business of such reorganization was, we think it can be assumed that such cost was substantial. And if, as the State contends, the new corporation after having incurred such expenses, must continue to pay the same taxes as would the predecessor corporations, had they continued, the business itself would have suffered an additional burden. Thus the equities are not all with the State. As above stated, however, this is not an equitable proceeding; but one clearly of statutory construction.

It is further urged that the State's contention is supported by departmental construction of the Comptroller. The testimony shows, however, that no such question had ever been presented to the Comptroller, nor passed on by him. On the other hand the Attorney General had held in a written opinion issued in 1928 that, in a case analogous to the situation here presented, Art. 7073 and not 7060 applied. That opinion appears to have been continuously followed and relied upon since said date; and was relied upon by appellee when it began business on January 1, 1943. However, in April, 1943, when appellee tendered the beginner's tax of $50, the Comptroller submitted the matter to the Attorney General and received another opinion overruling that of 1928 on the question involved, which eventually resulted in this suit.

Nor do we sustain the State's contention that because the charter of appellee was filed on December 11, 1942, it should be held to a tax liability as of that date, even under Art. 7073. This, on the ground of estoppel against the corporation to deny that it did not take over and begin to operate said business as of December 11, 1942. It is urged that a charter is not authorized until all of the capital stock has been subscribed and 50% paid in cash or property (Art. 1308, RCS); that when the Secretary of State accepts proof of such facts and files the charter, the existence of the corporation shall date from such filing. Art. 1313, RCS, Vernon's Ann.Civ. St. art. 1313. This contention is not sustained. The affidavit of the incorporators itself shows that the payment in property for the capital stock was a contract with the predecessor corporations to convey to the new corporation all of their assets on December 31, 1942, effective January 1, 1943. Such contract was not a mere unsecured promise to pay, as in Washer v. Smyer, 109 Tex. 398, 211 S.W. 985, 4 A.L. R. 1320; but an enforcible contract to convey property, which has held in Cole v. Adams, 92 Tex. 171, 46 S.W. 790, to be property within the meaning of the statute. See also General Bonding & Casualty Co. v. Moseley, 110 Tex. 529, 222 S.W. 961 (note secured by a mortgage on real estate). However, no attack is made on the validity of the charter; and it is not controverted that title to said properties did not pass to the new corporation until January 1, 1943; and that the new corporation, appellee here, did not begin and engage in the gas utility business until that date. Its tax liability is therefore referable to the date it began to do business. All occupation taxes prior to that date had already been paid.

Finding no error the judgment of the trial court is affirmed.

Affirmed.

McCLENDON, Chief Justice (dissenting).

I am unable to concur in the decision of my associates for the following reasons:

The rule which resolves the doubtful meaning of a taxing statute in favor of the taxpayer is, as its usual designation "strict construction rule" implies, one of construction only, and as such is in aid of the prime rule of construction of statutes, that of ascertaining the intent of the lawmaker. In ascertaining such intent, the statute must be read as a whole, in the light of the subject dealt with and in relation to the object to be accomplished. This latter rule is embodied in Art. 10, R.C.S. of 1925, and is one of general acceptation. The rule of strict construction is not applied where the legislative intent plainly appears from the language employed when read as above. "The rule that doubts are to be resolved against the government and in favor of the taxpayers should not, however, be given an application which will defeat the intention of the lawmaker." 51 Am.Jur., § 317, p. 368. "The intention being thus disclosed, it is enough that the word or clause is reasonably susceptible of a meaning consonant therewith, whatever might be its meaning in another and different connection. We are not at liberty to reject the meaning so established and adopt another lying outside the intention of the Legislature, simply because the latter would release the taxpayer or bear less heavily against him. To do so would be not to resolve a doubt in his favor, but to say that the statute does not mean what it means." Mr. Justice Sutherland writing for the Federal Supreme Court in Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 54, 79 L.Ed. 211. Holdings of like import might be multiplied indefinitely.

The taxes involved in Art. 7073 are occupation taxes, the particular tax here involved being that levied by Art. 7060 upon those "owning, operating or managing or controlling any gas * * * plant, located within any incorporated town or city in this State," etc. The tax, though a graduated one, is based upon gross receipts of the business. It is levied quarterly, and the amount for each quarter is based upon the gross receipts for the preceding quarter. The manifest purpose of Art. 7073 was to provide for a situation, not covered by Art. 7060, that is for a tax to cover the first quarter of a newly established business, having no previous quarter of operation and consequently no receipts therefrom. The word "begin" in the clause "begin and engage in any business for which," etc., clearly refers to "business" just as do the words "engage in." The transitive verb "to begin" means to start, commence, originate, initiate, institute, open, inaugurate. Webster, as well as any other standard lexicon. The words "begin and engage in any business" were clearly meant to cover a situation, not covered in Art. 7060, that is any business which had not already or previously been "begun and engaged in." Such a business would have no previous quarter of operation and no basis for fixing the amount of the tax for the first quarter under the rule prescribed in Art. 7060. It seems to me clear that Art. 7073 was not intended to apply to a business, already in operation, the ownership of which had changed hands. Such new owner would of course be a *beginner in* the business from the time his ownership began. But the business itself, the gross receipt from which furnish the basis for the tax, would not be begun by him, since it had already been started, commenced, originated, instituted, opened, and inaugurated by some predecessor in ownership. This situation was fully covered by Art. 7060 and therefore not embraced in Art. 7073. It is of course true that the tax is levied against the owner of the business, but the amount of the tax is measured by the gross receipts from the business, and it seems clear to me that Art. 7073 was not intended to apply to a business already begun and in operation, the mere ownership of which has changed hands.

The fact that in this particular instance the new corporation was required to pay a large franchise tax, and incurred other outlays, has no bearing upon the proper construction of the statute. These were mere incidents of corporate organization or other circumstances peculiar to the particular situation involved. The tax is levied alike upon natural persons as well as corporations engaging in the stated business, and is not affected by the expenses and outlays incident to a particular situation. I fully concur in that portion of the majority opinion to the effect that the

question here is purely one of proper statutory construction, unaffected by any equities which might arise in particular situations.