

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 29, 1952

Hon. Jack Ross
Secretary of State
Austin, Texas

Opinion No. V-1520

Re: Issuance of stock dividends out of surplus created by an appreciation in the value of corporate assets.

Dear Sir:

Your office has requested an opinion on the following question:

"Can appreciation in the value of the assets of a corporation form the consideration for the issuance of additional capital stock by means of a stock dividend to its stockholders?"

According to the records and information furnished with your request, the fact situation out of which the above question arose is as follows: A corporation chartered in Texas in 1923 with capital stock of $250,000 has made application to increase its capital stock to $500,000. The increase is to be made by means of a stock dividend aggregating $250,000, to be distributed to present stockholders in the same proportion as their present stock ownership. The assets of the corporation have been recently appraised by an independent and reputable firm of appraisers, and based on present values the appraisal shows the corporation's surplus to be in excess of the $250,000 which it proposes to convert into capital stock. You have stated that you are satisfied that the assets are presently worth the reappraised value. All of the stockholders of the corporation and all of the directors have authorized the proposed increase.

It appears from the factual statement submitted by the corporation that a portion of the surplus has resulted from investment of earnings in plant expansions. We have not been furnished with prior financial statements of the corporation, and consequently we do not know to what extent the stated surplus has resulted from appreciation in the value of assets since the date of their acquisition. However, your question necessarily assumes that a portion of the stated surplus represents appreciation in the value of corporate assets.

Article XII, Section 6 of the Texas Constitution provides:

"No corporation shall issue stock or bonds
except for money paid, labor done or property
actually received, and all fictitious increase of
stock or indebtedness shall be void."

Article 1353, V.C.S., reads:

"No corporation shall issue any stock what-
ever, except for money paid, labor done which is
reasonably worth at least the sum at which it was
taken by the corporation, or property actually re-
ceived reasonably worth at least the sum at which
it was taken by the company. Any corporation
which violates any provision of this article shall,
on proof thereof in any court of competent juris-
diction, forfeit its charter, permit or license, as
the case may be, and all rights and franchises
which it holds under, from, or by virtue of the
laws of this State."

There are no cases by the Supreme Court of Texas di-
rectly in point on the question of whether appreciation in the value
of the corporate assets fulfills the constitutional and statutory re-
quirements of money paid, labor done or property actually re-
ceived as the consideration for the issuance of a stock dividend.

In O'Bear-Nester Glass Co. v. Anti-Explo Co., 101 Tex.
431, 108 S.W. 967 (1908), the Supreme Court said with regard to
Section 6 of Article XII:

" . . . The purpose of the convention in enact-
ing that provision of the Constitution was to se-
cure creditors as well as stockholders of corpora-
tions against the practice which was too common
of corporations issuing fictitious stock and stock
upon an insufficient consideration, whereby the
actual capital was much less than the amount rep-
resented by the shares issued and sold by the cor-
poration. The terms in which this section of the
Constitution is expressed indicates the purpose
that the assets of the corporation should be some-
thing substantial, and of such a character that they
could be subjected to the payment of claims against
the corporation as well as to secure the sharehold-
ers in their rights in the capital stock."

In Cattlemen's Trust Co. of Ft. Worth v. Turner, 182 S.W.
438 (Tex. Civ. App. 1916), reversed on other grounds, Turner v.

Cattleman's Trust Co., 215 S.W. 831 (Tex. Comm. App. 1919), the court explained the purpose of these constitutional and statutory provisions as follows:

> "By the common law of the land owners of stock in corporations are entitled to a ratable share in its assets, and the evident purpose of the constitutional and statutory provisions under consideration was to protect the purchasing public in the acquisition of stock or bonds of corporations that was not represented by an equivalent in the way of assets belonging to the corporation issuing the stock, . . ."

If the only purpose of the constitutional and statutory provisions is to protect present and prospective creditors and stockholders against a fictitious increase in values, as these two cases indicate, it is difficult to see how the proposed stock dividend in the present case would be illegal. In order to ascertain if there will be a possibility of harm to stockholders or creditors, it is necessary to understand the nature of a stock dividend. In a recent opinion (Letter Opinion to Hon. John Ben Shepperd dated April 11, 1951), this office approved the following definition of a stock dividend as stated in 13 Am. Jur., Corporations, § 648:

> "In its ordinarily accepted meaning a stock dividend is a dividend payable in stock instead of cash, the declaration of which involves the creation or issuing of new stock to be distributed pro rata to the shareholders as evidence of the contemporaneous transfer of an equivalent amount of the surplus earnings or profits to the capital fund of the corporation. A cash dividend differs materially from a stock dividend in that a cash dividend, being declared on the then existing capital stock, subtracts so much from the treasury of the corporation and transfers it to the pocket of the stockholder, while a stock dividend takes nothing from the property of the corporation and adds nothing to the interests of the stockholders. A stock dividend implies a continuance of the corporation with the same assets and the same liabilities. The title to all corporate property remains in the corporation as before, but corporate profits or surplus is permanently appropriated to fixed capital, the shareholders receiving merely symbols or evidences of such appropriation. Where a stock dividend issues, the enterprise remains the same; the increase in capital stock simply dilutes the shares as they existed before."

You state that you are satisfied that the assets of the corporation are worth the reappraised value. In the light of the above explanation of the nature of a stock dividend, we fail to see a likelihood of injury from the proposed increase in capitalization.

Neither the O'Bear-Nester case nor the Turner case mentions increase in capitalization or issuance of stock based on an enhancement in the value of the corporate assets. Two opinions by Courts of Civil Appeals have said that increased value of the assets could not support a stock issue.

In Houston Cemetery Co. v. Drew, 36 S.W. 802 (Tex. Civ. App. 1896, error dism.), the question decided by the Court of Civil Appeals was whether the district court had acted properly in appointing a receiver for the corporation pending a hearing on the merits. One of the grounds upon which the appointment was sought was that the corporation had issued watered stock. On this point the court said by way of dictum:

> " . . . The capital stock was afterwards increased to $100,000, upon the estimated increase in value of the land bought for the purposes of the cemetery; and the certificates of stock were issued to the shareholders at the ratio of 10 of the new shares for 1 of the old. This was apparently within the inhibition of the constitution (article 12, § 6) against the issuance of stock except for money paid, labor done, or property actually received."

In Cole v. Adams, 49 S.W. 1052 (Tex. Civ. App. 1898), the receiver of an insolvent corporation brought suit to compel payment by the stockholders of the balances alleged to be due upon the stock issued to them. The corporation had been chartered on September 27, 1889, and after organization the defendants conveyed certain real estate, for which they had paid $14,000, and certain contract rights to the corporation. On May 22, 1890, it was estimated that the actual value of the property, rights, and franchises then owned by the corporation, including enhancement in value of the real property since its conveyance to the corporation, over and above its indebtedness, was $28,000. Based on that valuation, the corporation issued 40 shares having a par value of $100 to each of the seven defendants. Between that date and September 1, 1890, six of the defendants had contributed $500 each to the corporation, and that together with $10,000 out of earnings of the corporation had been invested in further plant expansions. On September 1, by agreement of the stockholders, the corporation issued 10 additional shares to each of six of the defendants. The receiver sued each of the defendants for 50 per cent of the par value of the shares issued to him, upon the theory that the defendants were not entitled to credit for "estimated enhanced value of the properties of the corporation,contracts,

proceeds, extensions made, and earnings from operation of the plant between the dates of the charter and the issuance of the stock." The Court of Civil Appeals sustained the receiver's right to recover for amounts based on enhanced value:

> "The appellants, under their first and second assignments of error, submit these two propositions: (1) The corporators who were not subscribers for capital stock were entitled to shares of paid-up capital stock to the full value of the property and effects owned and held by the corporation over and above its indebtedness at the time the stock was issued. (2) The corporators and stockholders of a corporation are the real and beneficial owners of all the property and effects held by the corporation, and they are entitled to full paid up shares of stock for the value of the property and effects of the corporation over and above the liabilities of the corporation. We cannot assent to either of these propositions. The relation of the corporators to the corporation in respect to its capital stock is not different from that of subscribers for the stock. Stock can be issued to neither, except for money paid, property conveyed or sold to the corporation, or labor done for it. The stock, it is well settled, which is unsold, is to be held as a security for the creditors of the corporation; and an enhancement of the value of the properties of the corporation will not authorize an additional issue of the stock to either corporators or subscribers for the stock.

> " . . . From what we have said, it follows that we think the court did not err in refusing to consider the alleged enhancement in the value of the franchises and properties of the corporation between the dates of the acquisition if [sic] its properties and that of the issuance of stock to the corporators, as any part of the consideration for which the stock was sold. . . ."

In an earlier opinion involving the same fact situation, Cole v. Adams, 92 Tex. 171, 46 S.W. 790 (1898), the Supreme Court in answering certified questions had made statements which, taken alone, we would be inclined to construe as holding that enhancement in value between the time the property was transferred to the corporation and the time the stock was issued could constitute the consideration for the issuance of stock. But the Court of Civil Appeals evidently did not so construe the Supreme Court's answers to its questions, and we do not feel at liberty to substitute our interpretation of the holding for that made by the Court of Civil Appeals.

The recent case of Adams v. Farmers Gin Co., 114 S.W. 2d 583 (Tex. Civ. App. 1938), indirectly supports the holding in Cole v. Adams. In that case the corporation had issued approximately 120 shares of stock at a par value of $25 per share, or an aggregate value of about $3,000. Subsequently, the gin which the corporation owned and operated had burned, and the corporation had received $10,000 in insurance. This sum, together with the land on which the gin stood, constituted the corporation's assets at the time a stockholders' meeting was held to decide whether the corporation should dissolve or should rebuild and continue in operation. At that meeting, it was agreed that the stockholders would "loan" to the corporation the amount which they would have received upon dissolution (about $125 per share) and that the corporation would build another gin and repay the "loans" out of future profits. Certain of the stockholders sued to recover the unpaid portion of the so-called "loans," and in the alternative they contended that the agreement amounted to the declaration of a stock dividend. The Court of Civil Appeals rejected this contention in the following language:

"Article 12, section 6, of the Constitution of Texas, quoted above, is, we think, a complete answer to plaintiffs' proposition No. 1, that is, their contention that a stock dividend was declared. A finding that a stock dividend was declared would not have found support in either the pleadings or evidence. The charter fixed the amount and par value of the stock. No action for the creation of preferred stock was taken. No amendment of the charter and the approval and filing of same by the Secretary of State, as required by article 1314, is shown. Plaintiffs paid no money and performed no labor and the corporation received no property from them as a legal basis for the issuance of stock. No net profits are shown to have been earned and unpaid on May 1, 1926. As heretofore stated, the corporation then held and owned the insurance money and all other assets. There was no transfer or conveyance of property, either actually, or in legal effect, from the stockholders to the corporation as a lawful basis for a debt or for stock of the corporation. An agreement to pay the stockholders cannot be enforced as a declared dividend or otherwise, except upon dissolution of the corporation. Dividends may be paid out of profits but not out of the capital assets of the corporation."

In the three cases last cited, the court in each instance unmistakably indicated that an increase in the value of the corporate assets would not support the declaration of a stock dividend. As against the general statements in the O'Bear-Nester and Turner cases, we must accept these expressions as being more nearly decisive of the scope of the prohibition contained in Section 6 of Article XII of the Constitution. Consequently, it is our opinion that this section of the Constitution forbids the issuance of additional capital stock in the form of a stock dividend based on the appreciated value of corporate assets.

## SUMMARY

Art. XII, Sec. 6 of the Texas Constitution prohibits a corporation from issuing capital stock based on the appreciated value of the corporate assets.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

E. Jacobson
Reviewing Assistant

By Mary K. Wall

Charles D. Mathews
First Assistant

Mary K. Wall,
Assistant

MKW:wb:b