**B. B. CARTER, Appellant,**

v.

**R. H. RICHARDSON, Appellee.**

No. 3533.

Court of Civil Appeals of Texas.

Waco.

June 26, 1958.

Rehearing Denied July 17, 1958.

Ivan Irwin, W. T. Durant, Dallas, for appellant.

Joe Schultz, Mexia, for appellee.

TIREY, Justice.

Appellee grounded his action on the failure of appellant to pay, according to their terms, two certain promissory notes, each in the principal sum of $10,000, and for the balance of the interest due and owing on one note in the amount of $4,000, executed by appellant and delivered to appellee; each of said notes being dated February 4, 1956, the $4,000 note being payable on April 4, 1956, one of the $10,000 notes being payable on July 4, 1956, and the other on February 4, 1957. Appellant entered a general denial and specially pleaded as a defense a total failure of consideration, and, in the alternative, a partial failure of consideration, and, in addition thereto, he filed a cross-action against appellee. Trial was had without the aid of a jury, and at the conclusion of the evidence and hearing of oral argument the court found in favor of the appellee and against the appellant, and awarded to appellee judgment on the notes sued upon, plus interest and attorney's fees, and denied relief on the cross-action.

Appellant excepted to the decree and perfected his appeal to this court, and at the request of appellant the court filed findings of fact and conclusions of law. We quote the material parts:

"Findings of Fact

"1. That the notes sued upon were executed and delivered in the forms substantially as alleged.

"2. That plaintiff delivered to defendant 112,500 shares of National Consolidated Mining Corporation stock of Missouri and assigned his (plaintiffs) interest in mining claims on 215,860 acres of land in the State of Wyoming for which these notes were given.

"3. That issuance of the stock was not void.

"4. That prior to the assignment, plaintiff owned an undivided interest in said mining claims.

"5. That the instrument assigning said interest contained description whereby right, title and interest therein could be ascertained.

"Conclusion of Law

"That there was consideration for the notes."

Appellant filed exceptions to the foregoing findings of fact and conclusion of law, which were overruled, and, in addition, also filed written request for further findings of fact and conclusions of law, and these requests were denied by the court. Appellant duly excepted.

Appellant assails the judgment entered on what he designates as nine points. They are substantially to the effect that the court erred in rendering judgment on the notes because (1 and 2) the notes were an integral part of a memorandum in writing, subject to the Statute of Frauds of the State of Texas and the State of Wyoming, and (3) because the court erred in finding that the instrument assigning interest in land contained description whereby right, title and interest could be ascertained; (4 and 5) because the undisputed evidence showed a total failure of consideration, or in all events a partial failure of consideration; (6) in finding that the issue of corporate stock was not void when the court in another finding of fact found that appellee owned an interest in the very lands that were supposed

to have furnished the sole consideration for the issuance of such corporate stock; (7, 8 and 9) that the court erred in rendering judgment denying a recovery to appellant for monies paid on a void contract and in denying a recovery to appellant for monies paid where there was a failure of consideration, and in concluding as a matter of law that there was consideration for the notes.

■ Since this cause was tried without the aid of a jury, we are bound by the following rule: " 'The rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings.' See Cavanaugh v. Davis [149 Tex. 573], 235 S.W. 2d 972, 977; Woodward v. Ortiz [150 Tex. 75], 237 S.W.2d 286. See also cases collated under 4 Texas Digest, Appeal & Error, ■ See Wilson v. Teague Independent School Dist., Tex.Civ.App., 251 S.W.2d 263, 268 (writ ref.).

In Googins v. E. W. Hable & Sons, Tex. Civ.App., 237 S.W.2d 705, 707 (n. r. e.), writ certiorari denied 342 U.S. 944, 72 S.Ct. 556, 96 L.Ed. 702, this court held "that (a) absent a jury the court becomes the trier of facts as well as the law, and his findings are equivalent to a jury verdict on special issues; and (b) that a reviewing court will not disturb the fact findings of the trial court, if there is some evidence of probative force to support the same, viewing the evidence in the light most * * * favorable to him. See John Hancock Mutual Life Ins. Co. v. Stanley, Tex.Civ.App., 215 S.W.2d 416 (no writ history), points 1 and 2 and authorities there collated; see also Rule 296, Texas Rules of Civil Procedure, and authorities there collated."

■ Moreover, since this suit involves an action on promissory notes executed and delivered by appellant to appellee and payable to him in Texas (Art. 5933, Vernon's Ann.Civ.St.), the action is controlled by our Negotiable Instruments Act; and since appellant interposed a plea of failure of consideration, and, in the alternative, a partial consideration, Sections 24 and 25 of Art. 5933, V.A.C.S. are applicable here.

Section 24 provides: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." Section 25 provides: "Value is any consideration sufficient to support a simple contract. * * *."

Since the notes sued upon are negotiable instruments, they imply a consideration under the terms of Art. 5933 aforesaid. Moreover, since appellant sought to defeat these notes by a plea of total or partial failure of consideration, the burden rested upon him to prove the absence of all of the elements which in law constitute a valid consideration. See statement of the rule in Shaw v. McShane, Tex.Com.App., 50 S.W. 2d 278; see also 6 Tex.Dig., Bills & Notes, ■ See also Kliesing v. Del Barto, Tex.Civ.App., 282 S.W.2d 249 (n. r. e.). Our Supreme Court has not seen fit to change the rule there stated.

Returning now to a discussion of what we consider to be appellant's main point, which is failure of consideration, it is important to view the factual situation, which we believe is substantially without dispute. At the time the negotiations were had between the parties hereto, appellant was a resident of Amarillo, Texas, and appellee was a resident of Mexia, Texas. Appellant and appellee had known each other for some time, the exact time not shown, but appellant, prior to the negotiations that terminated in the trade between the parties, had visited with appellee in the State of Wyoming and had inspected some of the mining claims and oil leases in which appellee had an interest. Prior to the sale of his stock,

appellee was engaged in drilling a well at Bastrop, Texas, and appellant went there to see appellee about purchasing this stock.

The record shows that the notes in suit were dated February 4, 1956, and that at the time they were executed appellant paid to appellee $6,000 in cash. The $4,000 note was due April 4, 1956, and it was paid (except interest) before suit; one of the $10,000 notes was due July 4, 1956, and the other February 4, 1957. No other contract was executed by the parties at the time of this transaction, and appellee said that at the time he sold and delivered the stock to appellant that it had been paid for. Appellee further testified to the effect that at the time the shares were executed and delivered to him and his wife, the National Consolidated Mining Corporation of Missouri was indebted to him in the sum of $5,500; that he paid no cash but he turned over property to the corporation, and that he paid money for this property; that the corporation still owed him this $5,500 at the time he was so testifying.

Appellant tendered in evidence an instrument executed by appellee and appellant on the 3rd of March 1956. We quote the pertinent parts of this contract:

"Whereas, first party is the holder of certain mining claims, located in Wahakie, Fremont, Natrona and Johnson counties, Wyoming. Said acreage being more fully described as, approximately 30,000 acres of deeded land, and a lease on about 160,000 additional acres of Taylor grazing land rights, containing approximately 76 mining claims. These leases having been obtained by Frank Lawrence of Buffalo, Wyoming, in the latter part of 1954, and sold to R. H. Richardson of Mexia, Texas, (the first party to this contract agreement), M. N. Stafford, of Jennings, Louisiana, and J. B. Stafford of Opelousa, Louisiana. Also purchased from Frank Lawrence of Buffalo, Wyoming, the same being included in this contract, were leases on some 31,000

acres deeded land; with 20 mining claims and leases on approximately 22,760 acres of Taylor grazing land rights, located in Wahakie, Fremont, Natrona and or Johnson counties, Wyoming. The total acreage referred to herein being approximately 215,860 acres, and known as the Pumpkin Butte property, and the Copper Mountain property.

"Whereas, at the time of purchase of the property mentioned herein, from Frank Lawrence of Buffalo, Wyoming by R. H. Richardson, M. N. Stafford and J. B. Stafford, the total of all leases and mining claims of any nature whatsoever, were owned as follows:

"R. H. Richardson, Mexia, Texas an undivided one fourth (1/4) interest M. N. Stafford, Jennings, Louisiana, undivided one-half (1/2) interest J. B. Stafford, Opelousa, Louisiana, undivided one-fourth (1/4) interest.

"Whereas, it is now the desire of the first party to sell, transfer and assign to second party, all of his rights, title and interest in and to any and all of the above described property, mining claims, leases and rights of any nature, together with 100,000 shares of stock, issued by National Consolidated Mining Corporation, a Missouri Corporation, to J & R Construction Company, c/o R. H. Richardson, first party now represents and declares that he is the sole owner of J & R Construction Company of *Hunington*, W. Virginia, and said 100,000 shares of National Consolidated Mining Corporation stock is hereby transferred and assigned to second party, as a part of this contract. First party also represents and declares that one stock certificate, in the amount of 12,500 shares of National Consolidated Mining Corporation, a Missouri Corporation, was issued to Mrs. Irene Richardson, wife of R. H. Richardson (first party to this agreement), this stock certificate in the amount of 12,500 shares above mentioned, was

endorsed by Mrs. Irene Richardson, on or about March 2, 1956, and delivered to B. B. Carter (second party to this contract), together with one stock certificate in the amount of 100,-000 shares, originally issued to J & R Construction Company. Both parties to this contract, acknowledge and agree that the two above mentioned stock certificates totalling 112,500 shares, have been delivered to second party, said stock certificates being a part of this contract.

"Whereas, it is the desire and intent of all parties hereto, that only the one-fourth (¼) undivided interest of the first party, be included in this contract agreement. There being a desire and understanding of the first and second party, that if and in the event the description contained herein does not cover and include all of the undivided (¼) interest of the first party, then it is mutually understood by this agreement, that any and all right, title and interest that the first party now holds or may possess, or be entitled to receive at any future date, in this property traded from Frank Lawrence of Buffalo, Wyoming, referred to herein, as being sold by Frank Lawrence to R. H. Richardson, M. N. Stafford and J. B. Stafford, on or about August 10, 1955, shall pass and belong to the second party.

"Now, therefore, for and in consideration of the sum of Thirty Thousand and no/100 ($30,000.00) Dollars, to be paid by second party to the first party, as follows:

| | |
|---|---|
| Cash | 6,000.00 |
| Note, due April 4, 1956 | 4,000.00 |
| Note, due July 4, 1956 | 10,000.00 |
| Note, due February 4, 1957 | $10,000.00 |

"First party does hereby bargain, sell, transfer, assign and quitclaim unto second party, their respective heirs and assigns, all of his interest in and to the above described land, property, mining claims and leases, together with 112,500 shares of stock, issued by National Consolidated Mining Corporation, a Missouri Corporation, to J & R Construction Company of *Hunnington*, W. Virginia and or Mrs. Irene Richardson of Mexia, Limestone County, Texas."

It was executed by both parties in Amarillo, Texas, and was acknowledged before a Notary Public. This record shows that appellee was not a lawyer and that this instrument was prepared by some attorneys, probably in Denver, and that the first time he saw the instrument was at the office in Salida, Colorado, and that he and a Mr. Parmer went to Amarillo over the weekend to see Mr. Carter, and that the instrument was executed there. Appellee testified in part:

"Q. Now, Mr. Richardson, assuming you had conveyed and transferred every right that you had in this Wyoming land, 215,860 acres, to the Missouri Corporation in payment for the 112,500 shares of stock, then you didn't have any interest left. A. I didn't claim any interest. * * *

"Q. You wouldn't have any interest left to transfer to Mr. Carter, would you? A. I didn't think I did have any interest, and Mr. Carter didn't know about it. The attorneys are the ones that drew the contract. * * *

"Q. I will ask you to state whether or not Mr. Carter came to you to buy this stock rather than you going to him trying to sell it? * * * A. He come to me and wanted to know what I would take for it. * * *

"Q. Mr. Richardson, state whether or not Mr. Carter was ever on a part of this property in Wyoming that is referred to in this contract? A. He

spent several days out there with me looking it over.

"Q. And was that prior to the time, before he bought this stock. A. It was.

"Q. That he was out there on the ground? Now, they have introduced in evidence here an agreement between you and Mr. Carter, Mr. Richardson, dated March 3, I believe, 1956. I will ask you to state whether or not you had your attorneys draw this instrument? A. I did not."

We have read the statement of facts very carefully and we think the evidence shows without dispute that no fraud was practiced upon appellant by appellee; that appellant thoroughly understood what he was buying; he had been in Wyoming and had inspected the properties owned by appellee and transferred to the corporation, and at the time the notes were executed and delivered all of the testimony is to the effect that $30,000 was the purchase price of the stock, and that the mining properties in the State of Wyoming were owned by the corporation. The contract between the parties dated March 3, 1956 was prepared by the attorneys (without any solicitation or knowledge on the part of appellee and appellant) to show that appellant by the purchase of the stock had acquired all of the rights, title and interest that appellee had held in and to the mining properties and appellee was merely quit-claiming his interest in these properties to appellant. This contract recited the consideration previously passed from appellant to appellee and whether this contract was necessary or unnecessary is a matter of no concern now to these parties at this time under the pleadings and proof here tendered. Evidently the attorneys that drew the instrument thought it was necessary for this instrument to be drawn and executed inasmuch as the appellee had previously sold and delivered his stock in the corporation to appellant, and appellant by this instrument would be clothed with all of appellee's power and authority to execute any additional instruments that might have been necessary or required to perfect title to the leases and interests into the corporation. We think it appears from the record as a whole that appellant thoroughly understood the situation and relationship that existed between the National Consolidated Mining Corporation and appellee because the instrument dated March 3, 1956 between appellant and appellee showed that appellee intended to release and quit-claim such interest as he had in the mining properties in Wyoming to appellant, and certainly since appellant had the stock in the National Consolidated Mining corporation, appellant knew that he was getting all of the interest that appellee had in the corporation. We think the trial court was justified in finding impliedly the foregoing facts from appellee's testimony and from all of the surrounding facts and circumstances tendered in evidence. We think the foregoing implied finding was essentially an issue of fact to be determined by the trial court, and being of the further view that there is ample evidence to sustain such implied finding, this court is without authority to disturb it. See De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, point 12 on page 694, and cases there cited. See also Houston & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S.W. 415.

In General Bonding & Casualty Ins. Co. v. Moseley, 110 Tex. 529, 222 S.W. 961, our Supreme Court made this statement of the rule with reference to a subscriber purchasing stock in a corporation: "But under the established rule of decision in this court (Chief Justice Phillips), that contract rights transferred to a corporation in payment for stock are, to the extent of their value, 'property actually received' by the corporation, (Cole v. Adams, 92 Tex. 171, 46 S.W. 790)—a decision whose soundness cannot be controverted * * *." Our Supreme Court has not seen fit to change the rule there stated.

This record is without dispute that appellant received the stock. He held it until the corporation was changed and stock re-issued by a corporation organized under the laws of the State of Delaware and appellant made no complaint to appellee about the stock or notes, nor did appellant make any complaint to the effect that appellee's title in and to the properties in the State of Wyoming, had failed for lack of consideration or for lack of description, or for any reason whatsoever. Moreover, appellant did not plead nor tender any proof to the effect that he had sustained any loss for defect in title, or fraud, or for mis-representation in any manner whatsoever. We think the trial court was fully justified in finding impliedly from appellee's testimony alone that appellant thoroughly understood the transaction and that appellant was getting all of the interest that appellee held in the corporation, as well as a quit-claim to all of the interest appellee had in and to the properties of appellee in the State of Wyoming. In fact, we think the testimony is sufficient to sustain the court's finding that there was consideration for the notes in suit.

■ But appellant contends that the instrument assigning the interest in lands failed to contain a description whereby the right, title and interest could be ascertained. We think the foregoing contention passes out of this case under the undisputed record here because there is no pleading or proof to the effect that the Missouri corporation, or the Delaware corporation that succeeded to the assets of the Missouri corporation, had any loss in acreage by failure of description. There is certainly no pleading or proof to the effect that appellant sustained any loss by failure of description in the property assigned and set over by appellee. So far as this record is concerned, none of the descriptions failed. There is certainly no pleading or proof to the effect that the description in the leases was ever questioned until the question was raised in this law suit, and such title as appellee had had already passed to the corporation; and there being no pleading or proof that any loss had been sustained by appellant and the corporation because of defect in description, appellant's contention in this behalf presents no defense to this cause of action and we think it passes out of this cause under the present state of the pleadings.

Although appellant took the witness stand in this cause, he did not testify to the effect that the corporate stock that he had received from the Delaware corporation had failed, nor did he testify to the effect that any of the interest quit-claimed to him in the properties in the State of Wyoming had failed, nor did he testify to any loss whatsoever that had been sustained by the corporation because of defect in the description of the property. Appellant was in the State of Wyoming when he was served with citation in this cause and he made no complaint as to the notes until after he was served with citation, nor did he make a tender of what he had received until after he was served with citation. Since appellant had the burden of showing failure of consideration, we think the trial court was justified in finding that there was a consideration for the notes sued on and that the evidence is ample to sustain this finding.

We have considered each of appellant's points and are of the view that each is without merit and each is overruled.

Appellee has filed motion to dismiss the appeal in this cause. We have considered the same very carefully and do not believe that appellee is entitled to dismiss the appeal and the motion to dismiss appeal is overruled.

Accordingly, it follows that the judgment of the trial court should be in all things affirmed, and it is so ordered.

Affirmed.

HALE, J., took no part in the consideration and disposition of this case.